# UNITED STATES *v.* BENNETT.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR
THE SECOND CIRCUIT.

No. 629.   Argued January 6, 7, 1914.—Decided February 24, 1914.

The rule of interpretation that where there are two possible construc-
tions of a statute, one of which will give rise to grave doubts of its
constitutionality and the other avoids such question, the latter will
be adopted, is based on the existence of both conditions as to more
than one construction and doubt and is not applicable where neither
of those conditions exists.

The limitations of due process of law which prevent States from taxing
property in another State do not apply to the United States, the
admitted taxing power of which is co-extensive with the limits of the
United States and knows no restriction save as expressed in or arising
from the Constitution itself.

The Government of the United States as a nation by its very nature
benefits the citizen and· his property wherever found, and no imagi-
nary barrier shuts that Government off from exerting the powers
which·inherently·belong to it by virtue of its sovereignty.

The tax imposed by § 37 of the Tariff Act of 1909 applies to the use of
a foreign-built yacht owned by a citizen of the United States, al-
though such yacht, for a period of more than one year prior to
September 1, 1909, and to the levy of such tax, was used wholly out-
side of the limits and territorial jurisdiction of the United States.

The tax imposed by said act operated retrospectively, so as to be pay-
able on September 1, 1909, in respect of the year then ended, and
not only prospectively so as to become first due and payable on
September 1, 1910.

The whole amount of the tax imposed by said act became due and
payable on September 1, 1909, and not only such proportion thereof
as the time during which the act was in force at that date bore to
the whole year.

Congress has the power to levy a tax upon the use by a citizen of the
United States of a yacht which is not actually, and since a time
preceding the passage of the act was not, at any time used within the
territorial jurisdiction of the United States and which has its per-
manent situs in a foreign country.

Said act of Congress, imposing a tax upon the use of foreign-built
　　yachts alone, provides a valid tax, and a valid classification for pur-
　　poses of taxation, within the power to lay and collect taxes delegated
　　to Congress by the Constitution of the United States.
The tax imposed by said act is not in conflict with the requirement of
　　due process of law contained in the Fifth Amendment to the Con-
　　stitution of the United States.
The United States is entitled to recover interest upon the tax imposed
　　upon the use of foreign-built yachts under § 37 of the Tariff Act of
　　August 5, 1909.
This court answers the questions certified, in this case, according to the
　　facts stated in the certificate, and nothing in the replies should be
　　so construed as to deprive the court below of the power to take such
　　steps as it may deem necessary to avoid injustice by reason of any
　　mistake of fact that may be corrected.

THE facts, which involve the construction and con-
stitutionality of § 37 of the Tariff Act of 1909 imposing a
tax on foreign-built yachts and its application to a yacht
owned by an American citizen but which had not been
within the jurisdiction of the United States during any
part of the period for which the tax was levied, are stated
in the opinion.

*Mr. Assistant Attorney General Adkins*, with whom *Mr.
Karl W. Kirchwey* was on the brief, for the United States.[1]

*Mr. William D. Guthrie* for the yacht owner in this and
other cases argued simultaneously herewith.[2]

MR. CHIEF JUSTICE WHITE delivered the opinion of the
court.

So far as we deem it material to the question we are
called upon to answer, the certificate in this case is as
follows:

---

[1] See argument, p. 269, *ante*.
[2] See argument, p. 263, *ante*.

"The United States, plaintiff below, sued out a writ of error to this court to review a judgment of the United States Circuit Court for the Southern District of New York in the above-entitled cause, entered on July 6, 1911, dismissing the amended complaint of the United States in an action brought against the defendant below to recover the tax imposed by § 37 of the tariff act of August 5, 1909, c. 6, 36 Stat. 112, for the year ended September 1, 1909, upon the use of the foreign-built yacht 'Lysistrata,' owned by the defendant."

After reciting the averment as to the assessment of the tax by the collector amounting to '$13,601 and the failure of the defendant to pay, his citizenship and ownership of the yacht and the conformity of the assessment to the statute, the certificate states that there was a prayer for the recovery of the amount with interest. It then proceeds to state the answer of the defendant, setting up the non-registry and non-enrollment of the yacht, that she enjoyed no protection or privileges of any kind under the laws of the United States and that the yacht since 1904 "had not been within the jurisdiction of the United States, but had had a permanent situs within the jurisdiction of the Republic of France." The certificate then proceeds to state the facts as to ownership of other yachts in the United States in the exact words used in the answers in previous cases which we have this day decided and upon which the want of due process of law was set up. Then the certificate declares the United States demurred to this answer and that this demurrer was overruled and the United States electing to plead no further, there was judgment rejecting its claim and that error was then prosecuted to the Circuit Court of Appeals by the United States. The seven questions propounded are the equivalent of the questions in the *Goelet Cases,* just decided, except there is no question asked concerning the power to tax under the statute in case of the permanent domicile of

the owner in a foreign country which was the basis of the decision in the *Goelet Cases* because, as is shown by the certificate there was no assertion or proof that there was a permanent foreign domicile of the owner in this case. So that the first question in this case concerns the liability of a citizen of the United States having a domicile therein, for a tax on a yacht owned and used during the taxing period outside of the United States and is as follows: "I. Does the tax purporting to be imposed by section 37 of the act of Congress, approved August 5, 1909, apply to the use of a foreign-built yacht owned by a citizen of the United States, when such yacht, for a period of more than one year prior to September 1, 1909, and to the levy of such tax, was used wholly outside of the limits and territorial jurisdiction of the United States?" And if this question is answered in the affirmative, then the duty will arise of deciding whether because of that aspect the act is repugnant to the due process clause of the Constitution, since in determining the constitutionality of the act in the previous cases we were not called upon to decide whether the due process clause of the Fifth Amendment operates to prevent the levy of such a tax.

The statute applies, since, under the construction we have given it, it clearly establishes three standards as the basis of the excise duty which it imposes: citizenship and domicile within the United States, control by ownership or charter of a foreign-built yacht within the terms of the statute, and its use by the owner during the taxing period. But it is said that as in any event the use which the statute taxes is solely a use within the United States, therefore the statute does not embrace this case, since the finding establishes that the yacht whose use is here taxed was wholly used and located outside of the territorial limits of the United States. We fail, however, to find in the provisions of the statute any language which would justify our affixing to the word "use" the restricted sense upon which

the proposition is based.. On the contrary, the use provided for in the statute is unqualified, is generic and must be enforced in that sense if the statute is to be given its plain meaning. It is true that in deciding a previous case we held that the statute would not be construed without clear intendment manifested to that effect as including a tax on a citizen permanently domiciled outside of the geographical limits of the United States. But that ruling was based upon the proposition that as a taxing statute was usually confined to persons within the territorial jurisdiction of a taxing authority and to do otherwise would be exceptional, unless such view was compelled by its terms, the statute here involved ought not to be construed as having been adopted to accomplish such unusual and strange result. The directly opposite, is here applicable, since it is usual, where the taxing power is called into play as to an individual domiciled within the territorial limits of. the taxing authority, to. cause the manifestation of taxing power to be coterminous with the taxing authority of the Government levying the tax. Therefore it follows that the principle of interpretation previously applied has no possible application to the construction of the word, " use," which we are now considering. The difference between the two rules is that which must exist between not assuming in the one case that something exceptional has been done, and taking for granted in the other that a power expressed embraces that which is usual and incidental to its exertion. The argument that the statute should not be construed as applying to the use of a yacht wholly beyond the territorial limits of the United States, since if so interpreted it would be repugnant to- the Constitution, rests upon what in effect is a misconception of the elementary rule of interpretation that where there are two possible constructions of a statute, one of which will give rise to grave doubt as to its constitutionality and the other avoids such question, the latter will be adopted.

The foundation of this rule is the possibility of two constructions and the existence of the grave doubt as to constitutionality. To apply the rule in a case like this, where neither of such conditions exists would be to cause an imaginary doubt as to the constitutionality of a statute to render it necessary to give to the statute a wholly fictitious and unauthorized meaning, that is to say, the effect of adopting the contention would be but to declare that in every case where the construction of a statute was in issue its misconstruction would become necessary if only it was asserted that if rightly construed repugnancy to the Constitution would result. We come then to consider the contention that when the statute is correctly interpreted there will arise a conflict between its provisions and the safeguards of the Constitution not only for the purpose of demonstrating the unsoundness of the assertion of constitutional right, but also with the object of making it clear that even if the statute were susceptible of a different construction by resort to subtlety of reasoning or refinement of distinction, there is nothing of such gravity in the asserted constitutional question as to lead us to resort to such means in order to avoid giving to the statute the meaning which we have affixed to it resulting from its unambiguous text.

As not even an intimation is made in the argument that any limitation on the taxing power of Congress in this regard can be deduced from the provisions of the Constitution concerning the taxing authority and as the only limiting provision relied upon is the due process clause of the Fifth Amendment, it follows in this case, as it did in the *Billings Case*, that after all the assertion of want of power must rest upon the assumption that an attempt by the United States to tax the property of a citizen residing within its jurisdiction where such property is beyond the territorial limits of the United States, is so in conflict with obvious principles of justice and so inconsistent with

every conception of representative and free government as to cause the exertion of power to come within the limitations of the due process clause of the Fifth Amendment. We might well leave the answer to the contention when it is thus rightly understood to result from its mere statement, from the obvious misconceptions as to the nature and extent of the authority of a sovereign although it be a representative government, and from a true appreciation of the privileges as well as the duties arising from citizenship and the past and recent exertions by Congress of the very taxing authority which is now challenged. (See act of June 30, 1864, 13 Stat. 223, 281.) We do not however leave the contentions to be destroyed by their own weakness, but come briefly to consider the authorities which it is insisted maintain their correctness and to point out the error of the reasoning upon which their asserted applicability is based. We do not cite or review the cases relied on because we concede that the doctrine which it is asserted they decided is elementary and in fact is the settled rule in this court. The principle of the cases is thus stated in the argument: "It is a settled rule of constitutional law that the power to tax depends upon jurisdiction of the subject-matter of the tax. A long line of unbroken authority illustrates this firmly established doctrine in its various aspects and although the cases have all arisen under state tax laws, their reasoning is applicable to and controlling in the case of a Federal tax act." But the misapprehension consists not in a misconception as to what the cases relied on decided, but in taking for granted that because the doctrine stated has been applied and enforced in many decisions with respect to the taxing power of the States, that the same principle is applicable to and controlling as to the United States in the exercise of its powers. The confusion results from not observing that the rule applied in the cases relied upon to many forms of exertion of state taxing power is based on

the limitations on state authority to tax resulting from the distribution of powers ordained by the Constitution. In other words, the whole argument proceeds upon the mistaken supposition, which is sometimes indulged in, that the calling into being of the Government under the Constitution, had the effect of destroying obvious powers of government instead of preserving and distributing such powers. The application to the States of the rule of due process relied upon comes from the fact that their spheres of activity are enforced and protected by the Constitution and therefore it is impossible for one State to reach out and tax property in another without violating the Constitution, for where the power of the one ends the authority of the other begins. But this has no application to the Government of the United States so far as its admitted taxing power is concerned. It is coëxtensive with the limits of the United States; it knows no restriction except where one is expressed in or arises from the Constitution and therefore embraces all the attributes which appertain to sovereignty in the fullest sense. Indeed the existence of such a wide power is the essential resultant of the limitation restricting the States within their allotted spheres, for if it were not so then government in the plenary and usual acceptation of that word would have no existence. Because the limitations of the Constitution are barriers bordering the States and preventing them from transcending the limits of their authority and thus destroying the rights of other States and at the same time saving their rights from destruction by the other States, in other words of maintaining and preserving the rights of all the States, affords no ground for constructing an imaginary constitutional barrier around the exterior confines of the United States for the purpose of shutting that government off from the exertion of powers which inherently belong to it by virtue of its sovereignty. But it is said in the decided cases relied upon, the principle which was an-

nounced was that the power to tax was limited by the capacity of the taxing government to afford that benefit and protection which is the true basis of the right to tax and which causes, therefore, taxation where such capacity to confer benefit and afford protection does not exist to be a mere arbitrary and unwarranted burden. But here again the confusion of thought consists in mistaking the scope and extent of the sovereign power of the United States as a nation and its relation to its citizens and their relations to it. It presumes that government does not by its very nature benefit the citizen and his property wherever found. Indeed, the argument, while holding on to citizenship, belittles and destroys its advantages and blessings by denying the possession by government of an essential power required to make citizenship completely beneficial.

Concluding from what we have just said that the first question must be answered in the affirmative, it follows from the considerations just stated and the views which we have expressed in the previous cases as to the operation and constitutionality of the act in other respects, that the remaining questions must be answered as follows: The second, Yes; the third, Yes, the whole tax; the fourth, Yes; the fifth, Yes; the sixth, No; the seventh relating to interest, Yes.[1]

---

[1] The questions propounded were as follows:

I. Does the tax purporting to be imposed by section 37 of the act of Congress, approved August 5, 1909, apply to the use of a foreign-built yacht owned by a citizen of the United States, when such yacht, for a period of more than one year prior to September 1, 1909, and to the levy of such tax, was used wholly outside of the limits and territorial jurisdiction of the United States?

II. Did the tax purporting to be imposed by said act of Congress operate retrospectively, so as to be payable on September 1, 1909, in respect of the year then ended, or only prospectively, so as to become first due and payable on September 1, 1910?

III. Did the whole amount of the tax purporting to be imposed by said act of Congress become due and payable on September 1, 1909,

As by these answers the right to impose and collect the tax under the facts stated will be established, in view of what we shall say in a case between the same parties which follows this, we think it proper to observe that nothing in our reply to these questions is to be so construed as to deprive the court below of the power to take such steps as it may deem necessary to avoid injustice if it should be deemed that by some mistake of fact such a result might occur. The answers to the questions will be certified in accordance with the directions above given.

*And it is so ordered.*

---

or only such proportion thereof as the time during which the act was in force at that date bears to the whole year?

IV. Has Congress the power to levy a tax upon the use by a citizen of the United States of a yacht which is not actually and since the year 1904 was not at any time used within the territorial jurisdiction of the United States and which has its permanent situs in a foreign country?

V. Does said act of Congress, by purporting to impose a tax upon the use of foreign-built yachts alone, provide a valid tax, or a valid classification for purposes of taxation, within the power to lay and collect taxes delegated to Congress by the Constitution of the United States?

VI. Is the tax purporting to be imposed by said act of Congress in conflict with the requirement of due process of law contained in the fifth article of amendment to the Constitution of the United States?

VII. Is the United States entitled to recover interest upon the tax imposed upon the use of foreign-built yachts in and by section 37 of the Tariff Act of August 5, 1909?