Argued March 16; reversed April 26; rehearing denied June 7, 1932

MENDIOLA *v.* GRAHAM, County Judge, et al.

WARD *v.* GRAHAM et al.

FRASER *v.* GRAHAM et al.

(10 P. (2d) 911)

*Dean Driscoll,* of Boise, Idaho, and *E. M. Blodgett,* of Nyssa, for appellants.

*A. A. Smith,* of Baker, for respondents.

CAMPBELL, J. Plaintiff John Mendiola filed his complaint in the circuit court alleging that he is a citizen of the United States and a resident of the state of Idaho; that he owned certain sheep, cattle and horses that he had been accustomed to graze on the public domain of the state of Oregon. He complains that the Oregon law, which was chapter 160 of the 1923 session of the Legislature of the state of Oregon, as amended by chapter 138 of the laws of 1927, now being §§ 20-2101 to 20-2111, inclusive, Oregon Code 1930, is unconstitutional and void.

Audrey Ward filed a suit in the circuit court alleging that he is a citizen of the United States and a resident of the state of Oregon and that he owns certain livestock that he had been accustomed to graze on the public domain in Malheur county, Oregon, and intended to continue doing so. He also alleges that §§ 20-2101 to 20-2111, inclusive, Oregon Code 1930, are unconstitutional and void.

D. F. Fraser brought suit against the same parties alleging that he is a citizen of the United States and a resident of the state of Oregon; that he is the owner of certain livestock within the state of Oregon and that he intended to graze the same on the public domain in Malheur county, Oregon. He also alleges that §§ 20-2101 to 20-2111 inclusive of the Oregon Code 1930 are unconstitutional and void and that all the proceedings had thereunder are also void. To each of these complaints a demurrer was filed on the ground of lack of jurisdiction of the court, and that the complaint did not state facts sufficient to constitute a cause of suit.

Each of the demurrers were sustained. The respective plaintiffs declining to plead further, a decree of dismissal was entered. Plaintiffs appeal.

By permission of this court the cases were consolidated and presented here as one case. As the pleadings now stand the only question presented is the constitutionality of the law.

The Legislature of the state of Oregon, at its session in 1923, passed an act which is commonly known as the Oregon Grazing Law.

Section 1 of the act, now § 20-2101 of the Oregon Code 1930, provides that the county judge, the county commissioners, together with the county stock inspector, shall constitute the county grazing board. This board, when petitioned by twenty freeholders residing within the proposed district, may establish a grazing district, and on like petition may in its discretion change, divide or abolish such district on giving notice as therein provided.

Section 2, § 20-2102, provides that when a grazing district is established the county clerk shall call an election on petition of twenty freeholders, residents of said district, and submit to the voters of said district the question of licensing the grazing of stock in said district. The election shall be conducted under the general laws, except as to the form of ballot. The county court shall canvass the vote and if the election results in favor of the license system, the county grazing board shall meet within ten days thereafter and make an order declaring the result of said election, and absolutely prohibit the "grazing of any livestock off the premises" of the owner or keeper within the grazing district without a license from the county grazing board. That sixty days after notice of said order

it shall be unlawful to herd or "graze livestock off the lands of their owner" without a license and provides a penalty for each offense.

Section 3, § 20-2103, provides for a classification of the users of the range by the county grazing board as follows:

(a) Class 1, bona fide owners of livestock who reside within the grazing district and who shall be given preference for grazing permits for livestock.

(b) Class 2, bona fide owners of livestock who reside within the state of Oregon outside the grazing district, who shall have been users of the range prior to the organization of the grazing district, and who shall only be granted permits to graze livestock, if any grazing facilities remain after granting permits to all class 1 users who may make application therefor.

(c) Class 3, transient and nonresident owners of livestock who shall be granted permits to graze livestock only when grazing facilities are available in such grazing districts after granting grazing permits to all class 1 and class 2 owners who make application therefor.

Section 4 as amended by Laws 1927, § 20-2104, provides that any livestock owner wishing a license to "graze livestock off his premises" shall file with the county clerk of the county containing the restricted district a petition addressed to the county grazing board, and pay a fee of $5 (declared to be a reasonable sum for administering the act) for such grazing privileges. The county grazing board, together with the advisory board and the county assessor, shall thereupon investigate the available grazing in the district, as well as the grazing requirements of class 1 which

class shall be issued licenses for "grazing their livestock off their premises" for the remainder of the calendar year.

The county court shall issue licenses for grazing livestock to the owners classified as class 2 and class 3 only to the extent that it finds there is available grazing for said classes in excess of the reasonable requirements of class 1. It further provides that when a majority of the freeholders in one or more precincts within the grazing district shall petition the county court requesting that an election be held to determine whether all the livestock in class 2 and class 3 be excluded from such precincts, the county clerk shall forthwith give notice of such election at which said question shall be submitted to the voters. If the result of the election is favorable to the exclusion of all such livestock, then the county grazing board shall within ten days cancel all grazing licenses which have been issued to said classes and enter an order absolutely prohibiting the owner from grazing such livestock within such precinct.

Section 5, § 20-2105, provides for an appeal to the circuit court from any action of the county grazing board with reference to granting, rescinding or modifying any license issued by said board.

Section 6, § 20-2106, provides for the selection by the freeholders of the district of three of the resident freeholders as an advisory board to the county grazing board.

Section 7, § 20-2107, provides that grazing permits shall not be issued by the county grazing board without notice to, and hearing given to the advisory board. This board shall also report to the county grazing board the condition and amount of grazing land available and shall also advise the county grazing board in

reference to increase or decrease of the number of stock allowed in any year, the division of the range between the different classes of stock, and the different classes of users or the adoption of special local rules.

Section 8, § 20-2108, provides that the act shall be ineffective until approved by the voters of the county.

Section 9, § 20-2109, provides as to the method and manner of making the act effective by election.

Section 10, § 20-2110, declares that "the regulation of grazing as herein provided is a proper exercise of the police power of the state of Oregon, and that a reasonable classification with reference to the licenses for grazing may be made of residents and nonresidents and transients; that it is for the best interests of the state and of all persons concerned that where the grazing facilities of any grazing district are limited and insufficient to take care of the sheep, cattle, horses and other livestock of all parties desiring to use the grazing facilities therein; that the reasonable requirements of the residents and taxpayers of said grazing district shall first be taken care of; that it is against the best interests of all concerned that transients and nonresidents shall be permitted to bring large numbers of sheep, cattle, horses or other livestock into a grazing district and use up the grazing facilities * * * And it is further declared that the needs of such local communities shall be taken care of first, and if there is insufficient grazing facilities for both the local and outside interests, that the local needs shall have the first place."

Section 11, § 20-2111, provides that if any part of the act should be declared unconstitutional it should not affect the remainder.

Plaintiff Mendiola complains that

(1) the Oregon Grazing Law interferes with the interstate commerce;

(2) that it attempts to lay a tax or duty on goods exported from the state of Idaho into the state of Oregon;

(3) that it attempts to lay imposts or duties on exports and imports other than those absolutely necessary for executing its inspection laws;

(4) that it deprives the plaintiff as a citizen and resident of the state of Idaho of privileges and immunities granted to a citizen of the state of Oregon, in violation of § 2 Art. IV of the constitution of the United States.

All the plaintiffs complain that it is unconstitutional

(5) In that it abridges the privileges and immunities of plaintiffs as citizens of the United States in violation of § 1, 14th Amendment of the Constitution of the United States;

(6) that it deprives plaintiff of liberty and property without due process of law in violation of § 1, 14th amendment of the Constitution of the United States;

(7) that it denies plaintiffs the equal protection of the laws in violation of § 1, 14th amendment of the Constitution;

(8) that it is not plainly worded in violation of § 21 Art. 4 Constitution of Oregon;

(9) that it grants citizens residing in said grazing district privileges and immunities which upon the same terms do not belong equally to all citizens in violation of § 20 Art. I of the constitution.

(10) that it prevents and obstructs plaintiff from entering upon the public domain of the United States within said grazing district and prevents and obstructs free passage or transfer over and through the public lands in said district in violation of § 1061, § 1063 Title 43 United States Code.

(11) That said law is too indefinite, uncertain and unintelligible to permit of its enforcement in the following respects: (a) that no provision is therein or elsewhere made for determining the number or kind of livestock that any licensees would be entitled to graze under any license; (b) that no provision is made for apportioning the grazing available for any class of licensees; (c) that no provision is made as to the length of time for which any license is to be valid; (d) that the qualifications of electors at the election at which the vote is taken for and against the license of livestock in said grazing district are not specified.

. Plaintiff Ward further complains:

(12) that the law creates a monopoly of grazing within said district;

(13) that said acts provided in said law are not within the police power of the legislature.

. The act was submitted at an election on May 16, 1930, to the voters of Malheur county and the majority of the ballots cast were in favor of making the law effective in that county, and it was so proclaimed. On September 19, 1930, a petition was filed signed by the necessary twenty freeholders asking the county grazing board to establish a grazing district (describing it). The county judge thereupon gave the necessary notice of the time and place of hearing of said petition. On October 1, 1930, the county grazing board met and after a hearing on said petition made and entered an order establishing said grazing district as described in the petition and notice for its establishment. The county grazing board did not give a name or number to this district but it is generally known as The Jordan Valley Grazing District and consists of 1,107,000 acres, of which approximately 188,000 acres is deeded, privately owned land and approximately 825,000 acres are unenclosed, public lands of the United States, sub-

ject to homestead. Thereafter in October, 1930, a petition signed by the necessary twenty freeholders of said grazing district was filed asking that an election be called for the purpose of submitting to the voters the question of licensing grazing within said district, whereupon the county clerk called the election, gave the required notice and the question was submitted to the voters at the election November 4, 1930. At this election there were 159 votes cast on the question, of which 148 were favorable and 11 unfavorable. Thereafter the vote was canvassed and the result declared. The matter rested in that condition until the present suits were filed, wherein plaintiffs asked for an injunction to prevent the officers from carrying out the law. No further proceedings have been taken to make the law effective, awaiting the result of these cases in this court.

We shall take up the propositions of law as they are presented in appellant's brief rather than as they were enumerated in the complaints.

■■ 1. It will be admitted by all parties that the police power of the state embraces regulations designed to promote the public convenience or the general prosperity of the community, and in a proper case such regulations may extend to the public domain. *Bacon v. Walker,* 204 U. S. 311 (27 S. Ct. 289, 51 L. Ed. 499); *Omaechevarria v. Idaho,* 246 U. S. 343 (62 L. Ed. 763, 38 S. Ct. 323); *Big Butte etc. v. Anderson,* 133 Or. 171 (289 P. 503); *McKelvey v. U. S.,* 260 U. S. 353 (43 S. Ct. 132, 67 L. Ed. 301). It will be further admitted that on unfenced, privately owned lands the state has the right to make rules and regulations, so long as such enactments do not limit the right of the private owner, that will enhance the general prosperity of the community.

2. "It also is settled that the states may prescribe police regulations applicable to public-land areas, so long as the regulations are not arbitrary or inconsistent with applicable congressional enactments. Among the regulations to which the state power extends are quarantine rules and measures to prevent breaches of the peace and unseemly clashes between persons privileged to go upon or use such areas." *McKelvey v. U. S.*, supra. It is axiomatic that the exercise of the police power by the state over the public domain, as well as the method by which such regulations are enforced, must be reasonable and is always limited by the state and national constitution.

■ "There is an implied license, growing out of the custom of nearly a hundred years, that the public lands of the United States, especially those in which the native grasses are adapted to the growth and fattening of domestic animals, shall be free to the people who seek to use them where they are left open and unenclosed." *Buford et al. v. Houtz et al.*, 133 U. S. 320 (10 S. Ct. 305, 33 L. Ed. 618). Congress may enact laws or may delegate rule making power to a ministerial officer to regulate the use of the public domain. *Light v. U. S.*, 220 U. S. 523 (55 L. Ed. 570, 31 S. Ct. 485). The state may also prescribe reasonable police regulations applicable to public land areas, "so far as such regulations do not conflict with congressional enactment or if congress has not acted." 50 C. J. 888, § 4; *McKelvey v. U. S.*, supra; *State v. Horn*, 27 Idaho 782 (152 P. 275).

When the state of Oregon entered the Union and accepted statehood there were certain propositions laid down by Congress which should be accepted by the state before statehood would be granted. The Legisla-

ture of the territory accepted those propositions; among others, ''that the said state shall never interfere with the primary disposal of the soil within the same by the United States, nor with any regulations Congress may find necessary for securing the title in said soil to the bona fide purchasers thereof \* \* \*.'' Accepting propositions of Congress made to the people of the state of Oregon; approved June 3, 1859, Oregon Code 1930, p. 37.

3. With these propositions of law as the premises we shall consider whether the statute under consideration is a reasonable regulation. The Legislature, in enacting this statute, Oregon Code, § 20-2110, declared

''That the regulation of grazing as herein provided is a proper exercise of the police power of the state of Oregon, and that a reasonable classification with reference to the licenses for grazing may be made of residents and nonresidents and transients; that it is for the best interests of the state and of all persons concerned that where the grazing facilities of any grazing district are limited and insufficient to take care of the sheep, cattle, horses and other livestock of all parties desiring to use the grazing facilities therein; that the reasonable requirements of the residents and taxpayers of said grazing district shall first be taken care of; that it is against the best interest of all concerned that transients and nonresidents shall be permitted to bring large numbers of sheep, cattle, horses or other livestock into a grazing district and use up the grazing facilities therein and then move to other grazing places after having lessened or materially destroyed, permanently or temporarily, the grazing facilities of such grazing district to the material injury of the citizens and residents of such grazing district who depend upon such grazing facilities for a livelihood and for the development and upbuilding of the local community.''

It is not unreasonable to protect the permanent residents and taxpayers of a community in the privileges and rights in which they are interested to a greater extent than any others. The act does not attempt to do more than conserve the range and prevent its destruction by overgrazing. It will not be contended that the Federal government has not the right, to conserve the natural resources of the public domain, and where the Federal government has not acted, the state, through its police power, may exercise such right and privilege. The state, as well as the United States, is vitally interested in preserving the natural resources within its boundaries.

The United States owns title to the public domain in trust for all the people, but it is the policy of the government to encourage the settlement on public lands. This policy cannot be carried out by permitting either transients or residents to destroy the herbage which in some sections alone makes the land valuable.

"Technically speaking, neither the cattle owner nor the sheep owner has a legal right to pasture his band of cattle or sheep on government land or privately owned land without permission, in the one case, of the government, and, in the other, of the private owner. He has a quasi right arising only from acquiescence in the first instance noted, and, in the second case, either from tacit acquiescence, or because the remedy, which the common law afforded the landowner of unfenced land, has been taken away in case he chooses to leave his land unfenced." Big Butte etc. v. Anderson, supra.

The tacit consent, or implied license to graze livestock on the public domain originated with the founding of the government and at a time when few could foresee that the public domain would eventually be completely occupied, but conditions have so changed

since the practice was initiated that it may well be considered reasonable for both the state and Federal government to regulate its use.

"* * * The police power has been described as the law of necessity and as the power of self-protection on the part of the community. This doctrine may be said to furnish the key to what is within and what is without the boundaries of such power; not that a police regulation to be legitimate must be an absolute essential to the public welfare, but that the exigency to be met must so concern such welfare as to suggest, reasonably, necessity for the legislative remedy. * * *

"The police power of the state, never having been exactly defined or circumscribed by fixed limits, is considered as being capable of development and modification within certain limits, so that the powers of governmental control may be adequate to meet changing social, economic and political conditions. It is very broad and comprehensive, and is liberally understood and applied. The changing conditions of society may make it imperative for the state to exercise additional powers, and the welfare of society may demand that the state should assume such powers." 6 R. C. L. §§ 187-188.

"The state, under its power to enact laws for the general welfare of its people, may pass laws designed to increase the industries of the state, develop its resources and add to its wealth, for instance, laws forbidding any waste of natural gas, or water, which would be detrimental to the public, as distinguished from an injury to an individual. The police power likewise extends to regulating or prohibiting the cutting of trees on the wild or uncultivated lands for the purpose of protecting the water supply of the state. It has been said that the constitutional power of the state to insist that its natural advantages shall remain unimpaired by its citizens is not dependent on any nice estimate of the extent of present use or speculation as to future needs." 6 R. C. L. § 206.

"The police power of the state extends only to such measures as are reasonable, and the general rule is that all police regulations must be reasonable under all circumstances. In every case it must appear that the means adopted are reasonably necessary and appropriate for the accomplishment of a legitimate object falling within the domain of the police power. A statute to be within this power must be reasonable in its operation upon the persons whom. it affects, and not unduly oppressive. The validity of a police regulation therefore primarily depends on whether under all the existing circumstances the regulation is reasonable or arbitrary and whether it is really designed to accomplish a purpose properly falling within the scope of the police power." 6 R. C. L. § 226.

The many authorities cited abundantly support the text. The statute in itself shows the "actual conditions or the beliefs, on which the legislators acted. In considering these matters we do not, in a strict sense, take judicial notice of them as embodying statements of uncontrovertible facts. Our function is only to determine the reasonableness of the Legislature's belief in the existence of evils and in the effectiveness of the remedy provided. In performing this function we have no occasion to consider whether all the statements of fact which may be the basis of the prevailing belief are well founded; and we have, of course, no right to weigh conflicting evidence." Dissenting opinion, Justice Brandeis, in *New State Ice Co. v. Liebmann,* 52 S. Ct. 371, 377, 76 L. Ed. 479, Supreme Court U. S. March 21, 1932. Although this appears in a dissenting opinion its logic is clear and it is not the part of the law on which there was disagreement. We therefore conclude that the purpose sought to be accomplished by the act is a reasonable exercise of the police power of the state.

■ 4. The next question to be determined is; are the means adopted to carry out these powers reasonably necessary for the accomplishment of the purpose? The county judge and the county commissioners are elected from the county at large. The governor of the state appoints the stock inspector. These constitute the grazing board. It requires a majority of the legal voters in any district to establish the license system in that district. This does not appear to us as unreasonable or arbitrary. Neither can we see anything unreasonable in giving the bona fide owners of the stock, being residents and taxpayers, a preference. There is good reason to give such stock owners the preference in order to maintain and conserve this natural resource of the state. The residents and taxpayers of the community are more interested in the matter than any one living outside would be. Stock owners who had been accustomed to using the range within the district as a grazing ground, would have a greater interest in preserving it as such than would the transient stock owners. The reason for giving those who have been accustomed to use it preference over transients is founded somewhat on a theory analogous to the right of discovery, thus adapting the rule of nations to that of individuals. It is also to an extent analogous to the law of treasure trove, as well as to the theory of the small boy: ''I saw it first.''

■ 5. It is next contended that the power vested in local residents and the grazing board with respect to the establishment of district boundaries, the establishment of license system and the issuance and revoking of licenses, are purely arbitrary.

Section 20-2101 provides for notice and a hearing by the county grazing board ''before any new district is established, or any changes made in the boundaries

of an existing district." This provision gives the county grazing board discretionary power to determine and establish or change the boundaries of a grazing district, at least by necessary implication. The method might have been more clearly defined, yet it would seem to be a reasonable way of fixing boundaries. At the election at which the question of adopting the licensing system is held, the laws relating to general elections apply. Consequently all legal voters residing in the district shall have the right to vote at such election. This would appear reasonable. Neither is there any uncertainty as to who has the right to vote.

Section 20-2105 of the act provides that all persons "applying to said county grazing board for a license and all persons who may feel aggrieved by any order of the county grazing board, with reference to the granting, rescinding or modifying [of] any license, may appeal * * * to the circuit court of such county * * * Said appeal shall be tried before the circuit court and a jury may be impanelled to try all questions of fact in said cause that prior to such appeal it was the province of the county grazing board to find and determine. * * *" This does not appear to be an arbitrary power vested in the county grazing board. The law has not conferred upon the county grazing board the power "to withhold assent without reason and without responsibility." The power given to them is confided discretion in the legal sense of that term, and is not granted to their mere will. It is not purely arbitrary, nor to be exercised without guidance or restraint. Herein it differs from the case of *Yick Wo v. Hopkins,* 118 U. S. 356 (6 S. Ct. 1064, 30 L. Ed. 220), a laundry case; *Marx, et al. v. Mabury,* 36 Fed. (2d) 397, a barber case; *Eubank v. Richmond,* 226 U. S.

137 (57 L. Ed. 156, 33 S. Ct. 76, 42 L. R. A. (N. S.) 1123), a street line building case; *Heerdt v. Portland,* 8 Fed. (2d) 871, a woodyard case.

■ 6. It is next contended that the statute violates the due process clause by reason of the uncertainty of its provisions. This contention is untenable. Nor does the appellant in any way point out in what particular the statute is uncertain, except that he complains that (1) it does not definitely state the number of livestock to be licensed; the answer to this is such number as there are grazing facilities for, as determined by the county grazing board with the assistance of the advisory board and the county assessor. (2) It does not specify the duration of the licenses issued; a fair construction indicates that license should be issued annually. (3) It does not prescribe the qualifications of voters at elections held under the act; this is answered elsewhere herein.

■ 7. It is next contended that the constitutional provisions for the protection of life, liberty and property are to be largely and liberally construed in favor of the citizen. The right to follow a legitimate business or occupation is a property right. With these propositions of law we have no dispute and frankly admit that they are the foundation of our government, both state and national. The cases cited by counsel in support of these propositions distinguish between liberty and license. It is true "that there is an implied license * * * that the public lands of the United States * * * shall be free to the people who seek to use them, where they are left open and unenclosed, and no act of government forbids this use." *Buford v. Houtz,* supra; *Light v. U. S.,* supra. This is merely a license, however, which may be withdrawn at any time

by the Federal government, or where the Federal government has failed to act, if deemed necessary for the public prosperity, or welfare by the state under its police power. The privilege of grazing livestock "off the premises of the owner" is neither a liberty nor a vested property right, but simply a revocable license.

8. Appellant lays down the proposition of law that said grazing district law and the act and proceedings of the defendants, as set forth in the complaint, deprive plaintiff as a citizen and resident of Idaho of the privileges and immunities of the citizens of the state of Oregon in violation of § 2 of Art. IV of the Constitution of the United States.

This is a serious defect. The statute provides that class 2 shall consist of bona fide owners of livestock who reside within the state of Oregon, but outside of the boundaries of the grazing district * * * This classification clearly discriminates in favor of the residents of the state of Oregon. It is an attempt, by the exercise of the police power of the state, to grant to such residents a privilege it withholds from the residents of other states, and falls within the constitutional inhibition of § 2, Art. IV, United States Constitution, and also of § 20, Art. I of the Oregon Constitution. *Travis v. Yale and Towne,* 252 U. S. 60 (40 S. Ct. 228, 64 L. Ed. 460) (a tax case). *Ward v. Maryland,* 12 Wall. 418, 20 L. Ed. 449, (a case requiring nonresidents to procure a license before being permitted to sell agricultural products). "If it be adjudged to be in the power of one state, when establishing regulations for the conduct of private business of a particular kind, to give its own citizens essential privileges connected with that business which it denies to citizens of other states" such legislation is unconstitutional. *Blake v. McClung,* 172 U. S. 239 (19 S. Ct. 165, 43 L. Ed. 432) ; (a case adjudging a law un-

constitutional that gives to residents of the state of Tennessee a preference over nonresidents in insolvency matters). *People v. McPherson,* 76 Colo. 395 (232 P. 675) ; (a case adjudging a law unconstitutional that required nonresidents to procure a license before being permitted to graze livestock on the public lands in Colorado). *Chalker v. Birmingham,* 249 U. S. 522 (39 S. Ct. 366, 63 L. Ed. 748), (adjudging a law unconstitutional that placed a license on nonresident contractors). *Hostetler v. Harris,* 45 Nev. 43 (197 P. 697), (adjudging a law unconstitutional requiring persons grazing cattle in the state, who do not have their principal home ranch and livestock headquarters in the state, to pay a license). The question then arises what effect will the elimination of the provision for class 2 have on the statute. It is not the province of the court to legislate. The Legislature at the time of enacting the statute had in mind the three classes of owners mentioned therein. It intended to make provision for each of these classes but with the provision of the statute for class 2 deleted, it does not appear as a practicable or reasonable measure. We are well aware of the rule of construction that a statute may be partly constitutional and partly unconstitutional and if the invalid part is severable the valid part may stand, while the invalid is rejected. 6 R. C. L. 121. Cooley's Constitutional Limitations, (7th Ed.) 247 ; *Gantenbein v. West,* 74 Or. 334 (144 P. 1171). This provision is attached by the Legislature to the statute under consideration, but even without such a legislative declaration the rule of construction would still permit the valid portion of the statute to stand. We are of the opinion that the legislature would not have enacted the law without the provision for class 2, and if it did it would have been an unreasonable exercise of the state's police power.

 Section 20-2104 also provides: "When a majority of the freeholders of any precinct or precincts in any grazing district shall file a petition with the county clerk of the county in which such grazing district is situated, requesting such official to call a special election on the question of excluding from such precinct or precincts all livestock owned by users of the range classified as class 2 and class 3 * * * the county clerk shall forthwith give notice of such election * * * "
If the vote at such election is favorable to the exclusion of classes 2 and 3 the county grazing board shall, not later than ten days after the county court has made the order declaring the result at such election, "revoke all licenses granted to such classes and absolutely prohibit" any such nonresident owners grazing their livestock within the precincts thereafter. This provision places it entirely within the power of the parties directly interested to create a monopoly for themselves, regardless of their necessity. This would also violate the provisions of § 20, Art. I of the Oregon Constitution, as well as be contrary to public policy.

 9. Plaintiff also contends that the grazing district law of Oregon and the action of defendants unlawfully hinder, burden and interfere with the Interstate Commerce Commission in violation of § 8, Art. I of the Constitution of the United States.

There is nothing in the statute to prevent the free passage of livestock to and from the state of Oregon. It does not require the owner of livestock to procure a license for such purpose. Neither does the law conflict with the United States statutes permitting all persons free passage for livestock over the public domain. The power is not given to the grazing board to prevent such passage.

There are some other questions raised which we feel are unimportant at this time and in case the legislature should see fit to reenact the law without the objectionable features herein pointed out could be taken care of.

The decree of the circuit court will be reversed and one entered declaring that the said grazing district law and all proceedings taken thereunder are unconstitutional and void. Neither party to recover costs or disbursements.