Argued June 8, 1977, affirmed January 3, 1978

# THARALSON et al, *Appellants,*
*v.*
# STATE DEPARTMENT OF REVENUE,
*Respondent.*
## (TC 1021, SC 24814)
573 P2d 298

Steven A. Zamsky, of Giacomini, Jones and Zamsky, PC, Klamath Falls, argued the cause and filed a brief for appellants.

Walter J. Apley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was James A. Redden, Attorney General.

LINDE, J.

## LINDE, J.

Oregon subjects to taxation "[a]ll property and any interest therein, within the jurisdiction of the state, whether belonging to the inhabitants of this state or not," which is transferred by inheritance or in other specified ways on the occasion of a person's death. ORS 118.010. The rate of the tax on an estate is determined by the amount of the estate subject to the tax, according to the following table set forth in ORS 118.100 (1):

The rates of tax on all estates shall be as follows:

| On any amount exceeding | But not exceeding | Rate (in percent) |
|---|---|---|
| $ 25,000 | $ 75,000 | 3 |
| 75,000 | 100,000 | 4 |
| 100,000 | 300,000 | 7 |
| 300,000 | 500,000 | 9 |
| 500,000 | | 12 |

The tax on the estate under this subsection shall be in full for all inheritance tax on any devise, bequest, legacy, gift or beneficial interest to any property or income therefrom which shall pass to or for the use or benefit of any grandparent, parent, spouse, child or stepchild or any lineal descendant of a child or stepchild of the deceased.

An additional inheritance tax is levied against beneficiaries other than a decedent's spouse or lineal relatives. ORS 118.100(2), (3).[1] Subsections (4) and (5)

[1]ORS 118.100(2) and (3), prior to their repeal in 1977, provided:

(2) When any inheritance, devise, bequest, legacy, gift or the beneficial interest to any property or income therefrom shall pass to or for the use or benefit of any brother, sister, uncle, aunt, niece, nephew or any lineal descendant of the same, or to a son-in-law or daughter-in-law, in every such case, in addition to the tax levied on such estate, such person shall pay an inheritance tax as follows:

| On any amount exceeding | But not exceeding | Rate (in percent) |
|---|---|---|
| $ 3,000 | $ 5,000 | 3 |
| 5,000 | 10,000 | 6 |
| 10,000 | 30,000 | 10 |
| 30,000 | 50,000 | 14 |
| 50,000 | | 20 |

provide for "picking up" any unused portion of a federal estate credit for a state tax to which Oregon may be entitled.

A section enacted in 1969, ORS 118.095, provides that when a decedent leaves property both within and outside Oregon, "exemptions" from the inheritance tax shall be prorated in proportion to the fraction of the entire property that is within Oregon.[2] The Department of Revenue construes this provision so as to prorate those parts of an estate that fall within the "zero rate" brackets of ORS 118.100.[3] Plaintiffs filed a

(3) In all other cases, in addition to the tax levied on such estate, such person, body politic or corporate shall pay an inheritance tax as follows:

| On any amount exceeding | But not exceeding | Rate (in percent) |
|---|---|---|
| $    500 | $  1,000 | 5 |
| 1,000 | 2,000 | 7 |
| 2,000 | 4,000 | 10 |
| 4,000 | 10,000 | 13 |
| 10,000 | 25,000 | 20 |
| 25,000 | | 25 |

[2] ORS 118.095:

(1) Where there is property belonging to decedent both within and without the State of Oregon exemptions allowed under the inheritance tax provisions of ORS 118.005 to 118.840 shall be prorated, and that portion allowed in the State of Oregon shall be in that proportion that the value of the property within the state bears to all the property within and without the State of Oregon.

(2) In order to secure an exemption where the property is thus situated, the estate representative must file with the Inheritance and Gift Tax Division of the Department of Revenue a certified copy of the inventory of all the properties without this state, and upon his failure to do so, no exemptions will be allowed in this state, whether there is property within this state or without this state.

[3] OAR 150-118.095:

Proration of Exemption Where Property Exists Both Within and Without the State of Oregon. Where property exists both within and without the State of Oregon, the exemptions provided in ORS 118.100 (1), (2) and (3) shall be prorated and that portion allowed in the State of Oregon shall be in that proportion that the value of the property taxable within the state bears to all property within and without the State of Oregon.

class action in the Tax Court[4] asking the court to declare this pro rate reduction invalid under the uniformity provisions of the Oregon Constitution[5] and the fourteenth amendment of the Constitution of the United States. The Tax Court rejected these constitutional claims, and plaintiffs appeal.

■■ It is the established practice of this court to examine nonconstitutional issues that bear on the decision of a case before reaching claims that the state has violated its own or the federal constitution, and to choose between alternative constructions of an uncertain text the one that avoids serious constitutional difficulty. *See State v. Harmon,* 225 Or 571, 577, 358 P2d 1048 (1961); *Wright v. Blue Mt. Hospital Dist.,* 214 Or 141, 144, 328 P2d 314 (1958); *Peninsula Drainage Dist. No. 2 v. City of Portland,* 212 Or 398, 418, 320 P2d 277 (1958); *Federal Cartridge Corp v. Helstrom,* 202 Or 557, 565, 276 P2d 720 (1954). In this case, the text of the challenged statute, ORS 118.095, leaves

\* \* \* \* \*

Property within the State of Oregon includes all property included in the gross taxable estate notwithstanding that some of such property is intangible personal property located outside of Oregon but owned by a deceased resident of Oregon.

Property without the State of Oregon includes all property of decedent not included in the gross taxable estate notwithstanding that some of such property is intangible personal property located in Oregon but owned by a nonresident of Oregon.

Property without the State of Oregon includes all of decedent's real property and tangible personal property located outside of Oregon.

[4] ORS 13.220(2) (a) (B). The Tax Court certified a class to "consist of all heirs, devisees, legatees, survivors in interest, and beneficiaries not otherwise barred by the three-year limitation of ORS 118.360, of persons whose estate have consisted of assets located within and without the State of Oregon and which have been subject to the operation of ORS 118.095." Neither party raises an issue concerning the propriety of this class action.

[5] No tax or duty shall be imposed without the consent of the people or their representatives in the Legislative Assembly; and all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax. Or Const art I, § 32.

The Legislative Assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State. *Id.* art IX, § 1.

much uncertain. First, while this section prescribes the apportionment of "exemptions," the inheritance tax statute does not describe the first, untaxed, steps of the tax tables in ORS 118.100, *supra,* as "exemptions." At the same time, the statute does provide for a number of "exemptions", but these do not lend themselves to the prorating prescribed in ORS 118.095. [6] Secondly, the prorating of the "zero rate" brackets in ORS 118.100 does not necessarily have the same effect as the prorating of a true "exemption" would have, if the thresholds for the steps beginning, for instance, at $75,000, $100,000, etc., are left where ORS 118.100 places them.[7] Finally, we note that the legislative assembly amended this statute in 1977, introducing new "exemptions" into ORS 118.100 and simultaneously repealing ORS 118.095, the section at issue here. Or Laws 1977 ch 666, §§ 9, 36. Accordingly, we invited the parties to submit supplemental memoranda on the uncertainties of the law in order to see whether decision of its validity is necessary. Apparently it is. The parties agree that ORS 118.095 was enacted at the instance of the Department of Revenue to match a similar prorating of inheritance tax exemptions by the State of Washington.[8] The Department's statement to the legislature and its subsequent administration of the section bear out this intended application of the

---

[6]Statutory exemptions from inheritance taxation include life insurance, ORS 118.040 (2) - (3), pension benefits, ORS 118.050, nonfee interests in federal grazing land, ORS 118.085, and intangible property of a nonresident decedent whose domicile allows a reciprocal exemption, ORS 118.060.

[7]The effect of an exemption, as that term is normally used in taxation, is to reduce the net taxable amount to which the tax rate is applied. If an exemption is partly denied, the net taxable amount is reduced that much less, but the rate brackets apply to that net amount. If denial, for instance, of part of the first, nontaxable, $25,000 step under ORS 118.100 does not affect the thresholds for the higher rate brackets, then that "zero rate" bracket does not function like a true exemption.

[8]The Washington inheritance tax, however, uses tax brackets beginning with the first dollar and gives true "exemptions" to various classes of beneficiaries. RCW §§ 83.08.020-83.08.040. The difficulties with ORS 118.095 were created by copying the Washington prorating formula into an incompatible Oregon statute.

prorating formula to the "zero rate" brackets and not to the exemptions actually so labeled in the inheritance tax statute. We turn, therefore, to the constitutional arguments.

■ With respect to the claim to uniformity or equality of taxation, this court has stated on past occasions that for practical purposes the concept is the same under the relevant provisions of the Oregon Constitution as under the equal protection clause of the fourteenth amendment.[9] *See In re Estate of Heck,* 120 Or 80, 86; 250 P 735 (1926), *citing Standard Lumber Co. v. Pierce,* 112 Or 314, 333, 228 P 812 (1924). This is so in the sense that a court will rarely have occasion to hold that an act provides the requisite uniformity and equality under the Oregon Constitution and yet falls afoul of the federal clause, though the opposite may well occur.[10] Thus we shall treat these claims together for convenience, though if Oregon's own law entitled plaintiffs to prevail, they need no claim under the Federal Constitution.

Article I, section 32, originally stated that "all taxation shall be uniform within the territorial limits of the authority levying the tax." It was amended in 1917 to the present form, *supra* note 5, which requires uniformity of taxation only "on the same class of subjects." H.J.R. No. 16, Or Laws 1917. The same

---

[9] Or Const art I, § 32, art IX, § 1, *supra* note 5. Or Const art I, § 20:

No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens.—

US Const amend 14:

No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.

[10] Words like "uniform" and "equal" in any constitutional formula, expressing a principle that like shall be treated alike, cannot rise beyond tautology without deciding what is alike for constitutional purposes, *i.e.,* what are distinctions without a constitutionally permissible difference or what known forms of inequality the particular clause was meant to end. Even when the verbal "tests" are similar, however, a state's application of its own constitution is independent of federal review and of changing applications of the fourteenth amendment, as have occurred since *Standard Lumber Co. v. Pierce, supra.*

[ 15 ]

resolution proposed, and the people adopted, changes in article IX, section 1, that replaced prior requirements of an "equal rate" and a "just valuation" with the less stringent requirement of "uniform rules" of assessment and taxation.[11] These changes were apparently thought necessary to facilitate the evolution of taxation beyond the *ad valorem* property tax and to allow different taxes on different "subjects," as well as differential rates of taxation (such as a progressive income tax), so long as the tax was uniform geographically and within one "class of subjects." *See Standard Lumber Co. v. Pierce,* 112 Or at 335, 228 P at 818-819. While the notion of a "class" cannot eliminate the problem of uniformity, the amendment signalled a change of political emphasis from the earlier concern for identical taxation toward a more differentiated tax system, safeguarded nevertheless against favoritism or discrimination, the same concerns that are embodied respectively in Oregon's article I, section 20, and in the equal protection clause. Accordingly, the court early held that lawmakers have broad freedom to classify the subjects of taxation both for purposes of the imposition and of the rate of tax. *In re Estate of Heck, supra; Standard Lumber Co. v. Pierce, supra; see* Etter, *Municipal Tax Differentials,* 37 Or L Rev 1, 35-45 (1957).

■ Measured by the standards set in those decisions, we cannot say that ORS 118.095 fails for lack of uniformity. The characteristic that differentiates one estate from another for purposes of prorating the "exemptions" in the inheritance tax brackets is the proportion of the taxable property that is within Oregon. It is not the court's concern whether the scheme had a reason with which we would agree. As

---

[11] Article IX, section 1, originally provided:

The Legislative Assembly shall provide by law, for a uniform, and equal rate of taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real, and personal, excepting such only for municipal, educational, literary, scientific, religeous [*sic*], or charitable purposes, as may be specially exempted by law.

already stated, the legislature itself has repealed it. But the rule does not differ from one part of the state to another. It does not single out any fixed group or class of persons; anyone might change or move property in and out of Oregon, altering the proportions of the eventual estate from day to day. The prorating rule is not tied to someone's residence within or outside Oregon, thus avoiding any issue similar to that in *Berry v. State Tax Commission,* 241 Or 580, 397 P2d 780 (1964), *appeal dismissed,* 382 US 16 (1965). *Cf. Mendiola v. Graham,* 139 Or 592, 10 P2d 911 (1932). While the effect of ORS 118.095 is to increase or decrease the tax collected on sums within the lowest tax brackets, this effect is the same for all estates and all heirs of estates that are similarly situated under the law. For the same reasons, we do not find ORS 118.095 to grant any citizen or class of citizens a privilege or immunity that is not equally available to all on the same terms, Or Const art I, § 20, nor to deny anyone the equal protection of the laws.[12]

■ Plaintiffs' main constitutional claim is that ORS 118.095, in prorating the "exemptions" by the location of the property of the estate, in effect levies the additional tax on property outside Oregon, which is said to violate the due process clause of the fourteenth amendment. They invoke the decisions of the United States Supreme Court in *Frick v. Pennsylvania,* 268 US 473, 45 S Ct 603, 69 L Ed 1058 (1925), and *Treichler v. Wisconsin,* 338 US 251, 70 S Ct 1, 94 L Ed 37 (1949). The Department relies on other decisions holding that property outside a state may be counted in determining the rate at which something otherwise

---

[12]Plaintiff cites for this part of his case only *Redfield v. Fisher,* 135 Or 180, 292 P 813 (1930), *rehearing denied,* 295 P 461 (1931). That decision, which invalidated a gross income tax on individuals because it was not also levied against corporations, was expressly based on the federal equal protection clause and the precedent of *Quaker City Cab Co. v. Pennsylvania,* 277 US 389, 48 S Ct 553, 72 L Ed 927 (1928). *Quaker City Cab* was overruled as "a relic of a bygone era" in *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 US 356, 365, 93 S Ct 1001, 35 L Ed 2d 351 (1973). In any event, the law in *Redfield* has no factual similarity to the one before us.

within the state's taxing power will be taxed. *Maxwell v. Bugbee,* 250 US 525, 40 S Ct 2, 63 L Ed 1124 (1919).[13] The Tax Court thought *Maxwell* closer than *Frick* and *Treichler* and sustained the Department's position.

None of these decisions arose from laws identical to the one challenged here, nor are their constitutional premises clear enough to indicate an obvious result. *Maxwell* in 1919 sustained a New Jersey inheritance tax levied against the transfer of the New Jersey property of nonresident decedents at a rate which was measured by the size of the entire estate. Given a progressive structure of rates, this resulted in a higher tax on the New Jersey property of an estate that had assets elsewhere than on the same amount of property of an estate that did not. Six years later, the Supreme Court held in *Frick* that Pennsylvania could not include in its tax on the transfer of a resident decedent's estate that part of his wealth represented by tangible property outside the state. *Frick* was applied in *Treichler* in 1949 to strike down a Wisconsin "emergency" inheritance surtax of 30 percent beyond the 80 percent of the federal basic estate tax already "picked up" by the state, insofar as the federal tax so used as a base included tangible property outside Wisconsin. No further guidance on the precise point has appeared in the past 28 years, though there has been considerable movement in other aspects of the constitutional law of state taxation.

Taking only these three decisions, it would appear that a taxing state may count the total size of an estate, including tangible property outside its borders, to increase the rate applied in taxing the transfer of

---

[13] *See also Great Atlantic & Pacific Tea Co. v. Grosjean,* 301 US 412, 57 S Ct 772, 81 L Ed 1193 (1937). Two state court decisions cited by the Department and the Tax Court follwed *Maxwell v. Bugbee* to sustain state taxes on the portion of the estate within the state's jurisdiction but computed as a fraction of the tax on decedent's entire estate. *In re Lagergren's Estate,* 276 NY 184, 11 NE2d 722 (1937); *Rigby v. Clayton,* 274 NC 465, 164 SE2d 7 (1968).

the estate within its jurisdiction, but it may not count the total wealth even of a resident decedent as the base for applying that rate in taxing his estate. Since either inclusion of out-of-state property in the formula increases the tax, taxpayers may be forgiven if they regard the distinction as one of the mysteries of constitutional law, a view shared by Justice Holmes, dissenting with three colleagues in *Maxwell, supra,* and by Justice Black, dissenting in *Treichler, supra.* Each was doubtful how a limit on the state's power to count extraterritorial values in taxing taxpayers and incidents within its jurisdiction could be attributed to the due process clause of 1868. *See, e.g., Union Refrig, Transit Co. v. Kentucky,* 199 US 194, 211, 26 S Ct 36, 41, 50 L Ed 150, 157 (1905) (Holmes, J., dissenting).[14] Insofar as the notion that one state has no jurisdiction over land or tangible property in the territory of another was a postulate of the federal system, it would antedate the Civil War and the fourteenth amendment. *See, e.g., Howell v. State,* 3 Gill 14, 21-23 (Md 1845); *State ex rel Potter v. Ross,* 23 NJL 517 (1857); *Railroad Co. v. Jackson,* 74 US (7 Wall.) 262, 19 L Ed 88 (1869); *St Louis v. Ferry Co.,* 78 US (11 Wall.) 423, 429, 20 L Ed 192 (1871). In its simplest form of a limit on state property taxes, the postulate recognizes that tangible property in one state is beyond another state's power to enforce a lien, levy execution, or transfer possession. *See Curry v. McCanless,* 307 US 357, 59 S Ct 900, 83 L Ed 1339 (1939). But the same postulate does not explain why a state may not collect from a taxpayer within its jurisdiction a tax measured by his

---

[14]This decision, generally cited as establishing the exclusion of out-of-state tangible property from state taxation, involved an effort by a state of incorporation to apply a property tax to a corporations's entire fleet of railroad cars, most of which never entered the state. It expressly distinguished inheritance or succession taxes. 199 US at 211. Justice Holmes's one-sentence opinion, *id.,* read:

> It seems to me that the result reached by the court probably is a desirable one, but I hardly understand how it can be deduced from the Fourteenth Amendment, and as the Chief Justice feels the same difficulty, I think it proper to say that my doubt has not been removed.

entire estate or inheritance, which need not be enforced against out-of-state property.[15]

Invocation of "due process" for this result is further complicated by the fact that the same words in the fifth amendment do not prevent the United States from taxing the foreign property of a taxpayer or an estate otherwise within its jurisdiction, apparently including nonresident citizens and land outside the United States, although the United States has no legal power there. *See United States v. Bennett,* 232 US 299, 34 S Ct 433, 58 L Ed 612 (1914); *Cook v. Tait,* 265 US 47, 44 S Ct 444, 68 L Ed 895 (1924); *Frick v. Pennsylvania, supra,* 268 US at 491; *cf.* Revenue Act of 1962, Pub. L. No. 87-834, § 18(a), 76 Stat. 960. These decisions place the difference on "the limitations on state authority to tax resulting from the distribution of powers ordained by the Constitution," *United States v. Bennett,* 232 US at 306,[16] or on "the relation of the States to each other in the Federal Union," *Burnett v. Brooks,* 288 US 378, 401, 53 S Ct 457, 77 L Ed 844 (1933), again, premises of federalism that do not stem from the fourteenth amendment. Also unenlightening are statements that due process makes the state's power to tax a resident by a measure that includes out-of-state assets depend, on whether the state con-

---

[15] A thorough critique of the inadequacy of constitutional doctrine in this field appeared in Bittker, *The Taxation of Out-of-State Tangible Property,* 56 Yale L J 640 (1947).

[16] The opinion in *Bennett* also stated that "it is impossible for one State to reach out and tax property in another without violating the Constitution, for where the power of the one ends the authority of the other begins," and that "the limitations of the Constitution are barriers bordering the states and preventing them from transcending the limits of their authority and thus destroying the rights of other states," *id.,* but it is not made clear how this is more true of a state tax than of a federal tax on property in other nations. The fact that the same property or transfer is also taxable by another jurisdiction is no constitutional obstacle, when no burdens on interstate commerce are involved. *See, e.g., State Tax Comm'n v. Aldrich,* 316 US 174, 62 S Ct 1008, 86 L Ed 1358 (1942), *Curry v. McCanless, supra,* 307 US at 372-374.

fers a benefit in return.[17] In no literal sense is the permissible rate or amount of a general tax on a resident tied to a corresponding benefit to the taxpayer, nor is it vulnerable to a showing that Peter is taxed to benefit Paul. Thus the *quid pro quo* notion is no help in explaining why a domiciliary state's benefits to a decedent are sufficient to count in his taxable estate the securities in his out-of-state wall safe, *see Blodgett v. Silberman,* 277 US 1, 48 S Ct 410, 72 L Ed 749 (1928), but not the painting that conceals it, *Frick v. Pennsylvania, supra.*[18] Rather, the distinction merely restates the extension to the inheritance tax of the same territorial postulate of state power to tax property that was earlier described as "jurisdiction."

ORS 118.095 does not purport to include tangible property outside Oregon in the gross estate or inheritance subject to its taxes. The state exempts from taxation certain amounts of the transfers that are within its jurisdiction, something it is under no obligation to do, and it fixes the size of the exemption with an eye to the size of the total estate or inheritance. In the absence of direct precedent or clearer light on the federal constitutional premises, we are not inclined to

---

[17] [W]hen a state reaches beyond its borders and fastens upon tangible property, it confers nothing in return for its exaction. Since the state of location has all but complete dominion over the physical objects sought to be measured for tax . . . no other state can offer a *quid pro quo.* A state is not equipped with the implements of power and diplomacy without its boundaries which are at the root of the Federal Government's undoubted right to measure its tax upon foreign property. *United States v. Bennett* . . . ; see *Burnet v. Brooks.* . . . And if the state has afforded nothing for which it can ask return, its taxing statute offends against that due process of law it is our duty to enforce.

*Treichler v. Wisconsin, supra,* 338 US at 256-257. A footnote qualifies this with the sentence: "Of course we have refused to be governed by this consideration when so to do would have placed a premium upon the avoidance of all state taxes." *Id.* at 257 n. 4 (citing cases). Of course, whether or not another state may tax the property has no bearing on any benefits afforded the taxpayer by the domiciliary state.

[18] *See also Pearson v. McGraw,* 308 US 313, 60 S Ct 211, 84 L Ed 293, *rev'g In re Hayes' Estate,* 161 Or 1, 86 P2d 424, *rehearing denied,* 87 P2d 766 (1939), in which an Oregon resident sought to avoid an Oregon estate tax on $450,000 by transferring federal reserve notes rather than securities to a trustee in Illinois.

[ 21 ]

extend to this law the rule of *Frick* and *Treichler* that the state may not levy an inheritance tax against tangible property beyond its borders. Accordingly, the decision of the Tax Court is affirmed.

Affirmed.