CASCADE STEEL ROLLING MILLS, INC.,
an Oregon corporation

*v.*

DEPARTMENT OF REVENUE

*and*

Linda Stephenson,
Yamhill County Assessor
*Intervenor*

(TC 3615)

David L. Canary, Garvey, Schubert & Barer, Portland, represented plaintiff.

Joseph Laronge, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Declaratory ruling issued March 17, 1995.

**CARL N. BYERS, Judge.**

This matter is before the court on defendant's Motion and Memorandum in Support of Motion for Declaratory Ruling. Plaintiff appealed the 1992-93 assessed value of its property to the Yamhill County Board of Equalization but did not appeal the board's decision sustaining the assessment to defendant. Later, plaintiff appealed to the Yamhill County Board of Ratio Review. The board of ratio review also sustained the assessed value and plaintiff appealed to defendant for an administrative hearing. When defendant did not act within nine months, plaintiff elected to treat the appeal as denied and filed its complaint in this court.

The disagreement between the parties concerns the scope of review and type of proof required for appeals to and from a board of ratio review. Defendant seeks the court's interpretation of ORS 309.100 to assist it in preparing for trial. Plaintiff contends that without a factual record the court cannot issue a declaratory ruling. The court has considered the written memoranda and oral arguments of the parties.

ORS chapter 28 provides for declaratory rulings. The relevant portion of ORS 28.020 provides:

"Any person * * * whose rights, status or other legal relations are affected by a * * * statute, * * * may have determined any question of construction or validity arising under any such * * * statute, * * * and obtain a declaration of rights, status or other legal relations thereunder."

As a party to this proceeding and as administrator of the tax laws, defendant is affected by and entitled to obtain a

declaration construing ORS 309.100. Although plaintiff contends to the contrary, the pleadings establish sufficient facts for the court to construe the statute.

The dispute involves statutory construction and is articulated differently by the parties. Defendant believes the issue is whether the legislature intended to limit relief at the board of ratio review to cases where there was a change in the real market value of the property after July 1 and before June 30. Plaintiff believes the issue is whether the taxpayer is required to do anything other than prove a lesser value during the tax year. Understanding these positions requires some background explanation.

Prior to 1991, property was assessed for taxation at its true cash value as of January 1 of each year.[1] In the November 1990 general election, the people of Oregon adopted initiative Measure No. 5, which became Article XI, section 11b, of the Oregon Constitution. That section limits the taxes that can be imposed on each $1,000 of property value. The section contains its own unique definition of value:

> " 'Real market value' is the minimum amount in cash which could reasonably be expected by an informed seller acting without compulsion, from an informed buyer acting without compulsion, in an 'arms-length' transaction during the period for which the property is taxed." Or Const, Art XI, § 11b(2)(a).

■ This definition has two unique features. First, it implicitly recognizes there is normally a range of values at which property will be sold or purchased. By specifying the "minimum amount," the definition dictates that the measure to use is the lowest amount for which the property would be exchanged in the marketplace. Secondly, the words "during the period for which the property is taxed" extends the time

---

[1] True cash value was defined as "market value" by ORS 308.205, which was interpreted by administrative rule to mean:

"[T]he most probable price in terms of money which a property will bring if exposed for sale in the open market, allowing a period of time and financing typical for the particular type of property involved and under conditions where both parties to the transaction are under no undue compulsion to sell or buy and are able, willing and reasonably well-informed." OAR 150-308.205-(A)(1)(a). (1989 Replacement Part.)

during which value is measured to the whole tax year. In short, real market value means the lowest amount for which the property would sell during the tax year.

Faced with this new constitutional concept, the legislature amended the property tax statutes to conform. It adopted the concept of real market value for assessment purposes. ORS 308.250. It also moved the assessment date from January 1 to July 1, the first day of the fiscal year. Although it retained the traditional appeal to the board of equalization, that appeal now comes after the tax statements are issued.[2] To fashion a remedy consistent with the year-long concept of real market value, the legislature provided for an appeal at the end of the tax year to a board of ratio review.

It is the language of the appeal provisions to the board of equalization and to the board of ratio review which are in dispute here. The relevant portion of each provision reads:

"(1)   The owner * * * may petition to the board of equalization for reduction of the real market or assessed value placed upon the property by the county assessor. Petitions filed under this subsection shall be for the reduction of the real market or assessed value of property as of July 1 * * *.

"(2)   The owner * * * may petition the board of ratio review for reduction of the real market value of property because of changes in the real market value of the property occurring after July 1 and on or before June 30 of any tax year." ORS 309.100.

Before addressing the arguments of the parties, it is necessary to consider some fundamental aspects of the concept of real market value. This requires a brief consideration of the concept of market value.[3]

Value, as an economic concept, implies a time certain. That is, value exists at a point in time.

---

[2] Petitions to the board of equalization must be filed not later than December 31 of each year. ORS 309.100(1).

[3] Although commonly used and widely understood, the concept of market value is constantly examined and reexamined by appraisal theoreticians. *See* Appraisal Institute, *The Appraisal of Real Estate* 18-22 (10th ed 1992).

"In the marketplace, value is commonly perceived as the anticipation of benefits to be obtained in the future. Because value exists at a given moment, an appraisal reflects value at a particular point in time. Value as of a given time represents the monetary worth of property, goods, or services to buyers and sellers." Appraisal Institute, *The Appraisal of Real Estate* 18 (10th ed 1992).

To estimate the market value of property, an appraiser must specify a point in time for that value.

"The date of a value estimate must be specified because the forces that influence real property value are constantly changing. * * * Market value is generally seen as a reflection of market participants' perceptions of future economic conditions, and these perceptions are based on market evidence at a specific point in time." *Id.* at 75.

Inasmuch as value is a function of the market at a specific point in time, real market value requires identification of that specific point in time during the tax year at which the property would change hands for the "minimum amount." Theoretically, this requires a day-by-day analysis of market data for the entire year. While this is a difficult task in retrospect, it is unrealistic to estimate value prospectively on a day-by-day basis.

ORS 308.210(1) requires the assessor to estimate real market value as of July 1, the first day of the tax year. Defendant contends that the assessor must look into the future and estimate the lowest value of the property during the tax year. In some circumstances, defendant believes that this estimate would be lower than the July 1 market value.

"The next hypothetical is where a house is assessed at $90,000 based on an estimate of a market value as of July 1 of $100,000 and an anticipated decline in market value of 10 percent during the tax year based on what would have been expected by an informed buyer and seller as of July 1."

However, value is a result of economic, governmental, environmental and social forces. Estimates of value are based on analysis and measurement of those forces. While an assessor may analyze market data and even anticipate a decline in value, no assessor is imbued with special powers to foretell the future. The market also anticipates changes in interest rates or other conditions which might cause prices to

decline. *If the market anticipates a decline in value, current market prices will reflect that anticipated decline.* In other words, with one exception, there cannot be a difference between estimates of market value and real market value for any particular date.

■ Consequently, an assessor's estimate of real market value on July 1, will be a market value estimate as of that date. This conclusion follows because the market and market data is the source of the assessor's estimate of value. It is market evidence of value which provides the foundation for an estimate of real market value. Any other estimate would be simply speculation.

The only exception to the above rule would be property which the market acknowledges or recognizes will have less value at the end of the tax year than it had at the beginning. Examples of this are depreciating or wasting property. Property which depreciates during the course of the tax year due to use has less value at the end of the year because it has less remaining life or productive capacity. In such cases, the July 1 market value will be greater than a July 1 estimate of real market value because it is known that there will be a loss in value by the end of the year. Although the market recognizes that the value will be less by the end of the year, the July 1 market value is higher because a purchaser on July 1 would have the use of the productive capacity for that year.

■ Using the concept of real market value in connection with appeals to the board of equalization raises other questions. Literally, under the current statutes and statutory definitions, one cannot appeal for a "reduction" of real market value. By definition, real market value is the lowest market value of the property during the year. However, ORS 309.100(1) provides that a taxpayer can appeal either the real market value or the assessed value of the property. Consequently, the legislature must have meant that the taxpayer can appeal from the *estimate* of real market value placed on the roll by the assessor. Under the statutory scheme, a taxpayer must appeal to the board of equalization to challenge the July 1 estimate of real market value.

■       The same conceptual problem arises from the use of real market value in appeals to the board of ratio review. There the statute permits a taxpayer to seek a "reduction" in real market value because of "changes" in real market value after July 1. By definition, a reduction or a change in real market value is literally impossible, at least within the same year. If real market value is the minimum amount during the year, it can neither be reduced or changed. Again, the legislature must have intended to mean that if the market value of the property declines from the July 1 *estimate* on the tax roll, the taxpayer may appeal to the board of ratio review. In such an appeal, the taxpayer must prove that a lower market value occurred at a specific point in time during the tax year after July 1.[4]

Part of the disagreement between the parties concerns what must be proved in an appeal to a board of ratio review. Must the taxpayer prove that the assessor's July 1 estimate of real market value was correct to be able to show a "change" in real market value? Is it enough to show that sometime during the tax year the property had a lower value? Must the taxpayer show the cause of the change in real market value?

■       A taxpayer appealing to the board of ratio review does not have to prove or disprove the July 1 estimate. The taxpayer merely needs to show that at some later point in the tax year, the market value was less than the July 1 estimate. To prove a lesser market value is to prove a "change in real market value." However, the lesser and later value must be based on post-July 1 events or market data. Otherwise, the value would not be a change. *See* OAR 150-309.018(1).[5]

In summary, value must be determined as of a point in time. Real market value is simply the lowest market value during the tax year. Property which by its nature or use is

---

[4] Inasmuch as the July 1 estimate is, except for depreciating property, a market value estimate, the statute would be much clearer if it used market value instead of real market value.

[5] The administrative rule seems to suggest that changes on the property itself after July 1, such as by fire or earthquake, would not be considered by the board of ratio review. Such a suggestion is contrary to the concept of real market value as defined in Article XI, section 11b, of the Oregon Constitution.

depreciating or wasting will likely have an end-of-year market value which is less than the July 1 market value. In such cases, the assessor must estimate the end-of-year market value and place that value on the roll as the July 1 real market value estimate. A taxpayer must appeal that July 1 value to the board of equalization if the taxpayer believes that the lowest market value during the tax year would be less. The taxpayer may also appeal the assessed value of wasting or depreciating property to the board of ratio review. In that case, the taxpayer would have to claim that the lowest market value of the property during the tax year was less than the estimate placed on the roll. Now, therefore,

IT IS ORDERED that defendant's Motion and Memorandum in Support of Motion for Declaratory Ruling is granted and this Order shall constitute the body of that ruling.