William W. and Lois A. SHATZER,

*v.*

DEPARTMENT OF REVENUE

(TC 3807)

William A. Shatzer appeared *pro se* for plaintiffs (taxpayers).

Joseph A. Laronge, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Decision for plaintiffs rendered February 6, 1996.

**CARL N. BYERS, Judge.**

In this appeal, plaintiffs (taxpayers) claim that Oregon's constitutional definition of real market value controls the assessed value of property damaged by fire. Resolving this claim requires the court to construe statutes providing for review of changes in value (ORS 309.100(2)),[1] proration of taxes for property destroyed by fire (ORS 308.425) and the statutory definition of real market value (ORS 308.205). The matter is before the court on taxpayers' motion for summary judgment.

The subject property is taxpayers' personal residence in Portland. The assessed value as of July 1, 1993, was $198,500, allocating $56,000 to land and $142,500 to improvements. On June 15, 1994, the home was extensively damaged by fire.[2] Taxpayers and the assessor agreed the real market value of the property after the fire was $103,000. The assessor placed that amount on the tax roll for the July 1, 1994, assessment.

Taxpayers appealed the 1993-94 assessed value to the Multnomah County Board of Ratio Review under ORS

---

[1] All references to the Oregon Revised Statutes are to the 1993 Replacement Part.

[2] The fire occurred two weeks before the end of the 1993-94 tax year and the beginning of the 1994-95 tax year.

309.100(2). The board dismissed taxpayers' petition on the ground that it had "no jurisdiction to reduce requests based upon fire." Taxpayers then appealed to the Department of Revenue (department). The department found that ORS 308.425, the statute providing for proration of taxes because of fire damage, is consistent with the Oregon Constitution's definition of real market value and denied taxpayers' claim. Taxpayers then appealed to this court.

Prior to the adoption of Article XI, section 11b (section 11b) to the Oregon Constitution, Oregon's property tax assessment system was prospective, or forward-looking. Real property subject to taxation was identified and valued as of 1:00 a.m. on January 1 of each year. *Former* ORS 308.210(1).[3] This was done six months in advance of July 1, the beginning of the fiscal year. If property was destroyed "by fire or act of God" prior to July 1, a taxpayer could apply to the assessor to have the property reappraised. The assessor reappraised the property as of July 1 for the assessment year. *Former* ORS 308.425. Any changes to the property after July 1, for whatever reason, were ignored.

In discussing Oregon's property tax system, it is helpful to remember two points concerning the concept of value. First, value must be established at a particular point in time. Property values constantly change due to wear and tear; obsolescence; additions and subtractions; and changes in the economy, technology and culture.

> "Because value exists at a given moment, an appraisal reflects value at a particular point in time. Value as of a given time represents the monetary worth of property, goods, or services to buyers and sellers." Appraisal Institute, *The Appraisal of Real Estate* 18 (10th ed 1992).

The second point to remember is that estimates of value are just estimates. In reality, there is a range of value. *Price v. Dept. of Rev.*, 7 OTR 18 (1977). Because property tax systems require an exact number, the estimate of value for an assessment is typically made at a specific point in time. *See* ORS 308.210(1).

---

[3] All references to the *Former* Oregon Revised Statutes are to the 1989 Replacement Part.

The significance of the above two points becomes clear when discussing section 11b's definition of real market value. That definition states:

> " 'Real market value' is the minimum amount in cash which could reasonably be expected by an informed seller acting without compulsion, from an informed buyer acting without compulsion, in an 'arms-length' transaction during the period for which the property is taxed." Or Const, Art XI, § 11b(2)(a).

By specifying that real market value is the minimum amount "during the period for which the property is taxed," the definition extends the valuation period to one year.[4] This definition is retrospective, or backward looking, because the minimum amount cannot be determined until after the year has passed.

When the people enacted section 11b by initiative, the Oregon legislature could have responded by suspending property taxes for one year. If taxes were delayed one year, tax assessments could be retrospective and consistent with the constitutional definition of real market value. Presumably, that alternative was not acceptable because local governments would be without operating revenues for one year. Instead, the legislature attempted to adapt a prospective tax system to a retrospective concept of value.

The legislature amended ORS 308.205(1) to define real market value as follows:

> "Real market value of all property, real and personal, *as the property exists on the date of assessment*, means the minimum amount in cash which could reasonably be expected by an informed seller acting without compulsion from an informed buyer acting without compulsion, in an arm's-length transaction during the fiscal year." (Emphasis added.)

This definition is essentially the same as that contained in section 11b except for the added phrase: "as the property exists on the date of assessment." ORS 308.205(1).

---

[4] Theoretically, tax periods could be less than one year, but the Oregon statutes and the constitution appear to assume an annual property tax.

The department argues the legislature intended by this definition to take a "snapshot" of each property on July 1 and impose taxes on the basis of the "snapshot." The legislature also amended ORS 309.100(2) by adding a provision for appeals to a board of ratio review at the end of a tax year. This enabled taxpayers to appeal assessed values due to decreases in the real market value of the property during the tax year. Finally, the legislature amended ORS 308.425 to provide for proration of taxes imposed on property that was destroyed or damaged by fire or act of God during the tax year. Under ORS 308.425, taxes are reduced one-twelfth for each month the property was destroyed or damaged proportionate with the loss in value due to the fire. Although that statute was applied in this case, it provided taxpayers with minimal relief because the fire occurred just two weeks before the end of the tax year.

## ISSUE

The issue is whether the constitutional definition of real market value in section 11b requires the assessed value of property to reflect post July 1 changes in the condition of the property.

## COURT'S ANALYSIS

■■■ The court concludes that the assessed value must reflect post July 1 changes in the condition of the property. The element of time is fundamental to the concept of real market value because the concept leaves the issue of value open for the entire taxing period. By looking back to determine the minimum amount for which the property could have changed hands, the constitutional definition implicitly requires physical changes in the property, as well as changes in the marketplace, to reduce the property's taxable value. Nothing in the definition suggests that changes affecting the value of the property are limited to external factors. Appraisers could not truly determine the "minimum amount" if they must ignore fire damage that occurs "during the period for which the tax is imposed." Certainly, the market would not ignore it, and a knowledgeable buyer and seller would consider it in agreeing upon the sale price.

■ The department contends that the legislature may fix a date for determining the identity, character, and extent of the taxable property and that no subsequent changes in the property will be recognized for that tax year. However, the power of the legislature is circumscribed by the constitution. While the legislature may act to implement constitutional provisions, it may not override or conflict with the constitution. *Bernstein Bros. v. Dept. of Rev.*, 294 Or 614, 661 P2d 537 (1983).

The department reasons that the fire damage was so great that the property became something different than the property assessed for taxation; it was no longer the same property as that taken in the "snapshot" on July 1. Aside from the difficulty of deciding how much change is required to make a property different, such an explanation is incompatible with the definition of real market value. Because taxes are imposed on property for an annual period, section 11b defines the taxable value as the least amount for which the property would change hands during that period. A house destroyed by fire will not bring the same amount as the house before the fire.

■ The court recognizes there is tension between the retrospective definition of real market value and the prospective administrative statutes. Fundamental principles require the court to construe the statutes, if possible, consistent with the constitution. *Tharalson v. Dept. of Rev.*, 281 Or 9, 573 P2d 298 (1978). Although there is tension between section 11b and ORS 308.205(1), it does not produce irreconcilable conflict. ORS 308.205 does provide for a "snapshot" of the property for assessment as of July 1. However, that language does not require a construction that ignores physical changes to the property after July 1. As this court has previously indicated, a determination of real market value as of July 1 can only be an estimate because it occurs at the beginning of the tax year. *Cascade Steel Rolling Mills, Inc. v. Dept. of Rev.*, 13 OTR 252 (1995). Although the assessor estimates the value of property as it exists on July 1, under the constitutional definition of real market value, the value of the property can not be fixed for certain at that point. The department recognizes this situation and acknowledges that depreciable machinery and equipment is assessed July 1 based on an estimate of the

following June 30 depreciated value. This approach implicitly recognizes that both the property and market conditions may change during the course of the taxing period.

The section 11b definition of real market value renders ORS 308.425 virtually meaningless except to the extent it provides a 30-day appeal period instead of the 15 days under ORS 309.100(2). To the extent ORS 308.425 is inconsistent with the definition of real market value, it must give way. Because ORS 308.425 provides an additional two weeks of limited relief, it retains a small viable existence.

■ ORS 309.100(2) provides an appeal for changes in value from any cause. In this case, the Multnomah County Board of Ratio Review erred in rejecting taxpayers' petition. The only restriction on appeals to the board of ratio review is that any change in value must be based on events or facts which occurred after July 1 of the tax year. *See Cascade Steel Rolling Mills*, 13 OTR at 258.

In view of the above, taxpayers' Motion for Summary Judgment must be granted. Now, therefore,

IT IS ORDERED that taxpayers' Motion for Summary Judgment is granted.