DECISION
Plaintiffs have appealed the value of their residential condominium unit for the 2009-10 tax year. Trial was held by telephone December 6, 2010. Plaintiffs appeared on their own behalf. Robert Monserud testified for Plaintiffs. Defendant was represented by Connie McCleary (McCleary), Registered Appraiser II, Clatsop County Assessor's Office. Also appearing for Plaintiff was Scott Rutter, Independent Consultant; Catherine Harper, Senior Appraiser; and Mike Grant, Chief Appraiser.
 I. STATEMENT OF FACTS
The subject property is a condominium unit in Astoria, Oregon, that Plaintiffs purchased for $206,000 at a public auction at the Sheraton Portland Airport Hotel on November 1, 2009. (Ptfs' Br at 2; Ptfs' Ex 2.) Plaintiffs explained that "[t]he auction was conducted by Kennedy Wilson Auction Group of Beverly Hills, CA." (Ptfs' Br at 2.)
The property is identified in the assessor's records as Account 57637. Subsequent to their purchase, the property was appraised by James Appraisal Inc., Cannon Beach, Oregon for $225,000 as of December 2, 2009. (Ptfs' Ex 14-4.) That appraisal was made for Evergreen Home Loans, Federal Way, Washington. Plaintiffs explained in their brief that "[t]he appraisal was required by the bank (Evergreen Home Loans) to secure financing * * *." (Ptfs' Br at 4.) *Page 2 
Plaintiffs reside in Portland, Oregon. Astoria is a coastal town in Northwest Oregon at the mouth of the Columbia River and the Pacific Ocean. Plaintiffs' condominium in Astoria is approximately 100 miles from their primary residence in Portland. According to Plaintiffs' appraisal, Astoria is the county seat and has "seen a resurgence over the past 5 years with development of commercial buildings within the downtown core and several condominium projects." (Ptfs' Ex 14-2.) The appraiser further notes that "Astoria is on the cruise ship circuit and this aids retail." (Id.)
The subject unit is in a newly constructed mixed use building with a condominium declaration recorded December 2, 2008. (Def s Ex A at 10.) For tax year 2009-10, Defendant placed a real market value (RMV) of $445,000 on Plaintiffs' unit, B406. (Ptfs' Compl at 4.) The entire amount of the RMV was "exception value," because it was new property that year (2009 assessment year).[1]
Accordingly, the exception RMV is also $445,000. Defendant set the maximum assessed value (MAV) and assessed value (AV) at $222,945, per ORS 308.146(3) and ORS 308.153(1).
Plaintiffs filed an appeal with the county board of property tax appeals (Board) and the Board sustained the assessor's values. (Ptfs' Compl at 4.) Plaintiffs timely appealed the Board's order to this court, requesting a reduction in the RMV from "between $206,000 (the selling price) and $225,000 (the independent appraisal [value])." (Id at 1.) In their brief, Plaintiffs assert the RMV should be $206,000. (Ptfs' Br at 1.) / / / *Page 3 
The subject unit is on the fourth floor of a four-story building and provides a view of the Columbia River. There is some discrepancy between the parties as to the size of the unit. Plaintiffs' appraiser indicates the unit is 1422 square feet, while Defendant estimates the size at just over 1300 square feet, 958 square feet on the main floor and a 354 square foot mezzanine. (Ptfs' Ex 14-3; Def s Ex A at 2, 4.) All the units on the fourth floor of the building have a loft-style floor plan with a raised second level designated as a "mezzanine." Plaintiffs' mezzanine features a "full bathroom and walk in closet." (Ptfs' Ex 14-3.) The building has 33 residential units and nine commercial units. Twenty-two of the residential units are single level one-bedroom units, and the remaining 11 are one-bedroom units with a mezzanine. (Def s Ex A at 4.) All of the residential units in the building have granite countertops, stainless steel appliances and sinks, soaking tubs, separate showers with ceramic tile, gas fireplaces, and hardwood floors. (Def s Ex A at 4.) According to the appraiser who valued Plaintiffs' condominium, the unit has an open floorplan, a fireplace, a full bathroom, and walk-in closet on the second level, and a balcony that is "accessed through a slider from the living room." (Ptfs' Ex 14-3.)
 II. ANALYSIS
Plaintiffs' appeal is based primarily on the November 1, 2009, auction purchase for $206,000 and various court cases discussing market value. Plaintiffs also rely on the sale of two other units on their floor, one on each side of their unit. Like the subject, those units were purchased at the November 1, 2009, auction, one, unit B405, for $206,000, and the other, unit B407, for $210,000. (Ptfs' Ex 12-3; 12-4.) Plaintiffs further presented evidence on the sale of five other units on the fourth floor sold during the November 1, 2009, auction.
Defendant contends that Plaintiffs' purchase is not a fair indication of value on the assessment date because Plaintiffs did not buy their condominium until 10 months after the *Page 4 
assessment date, during a period of rapid market decline. Also, Defendant argues that the purchase was not "arm's-length" because Plaintiffs bought the property at auction under distressed conditions. Defendant insists that comparable sales support an RMV of $445,000, which is the current RMV on the assessment and tax rolls.
The issue before the court is the 2009-10 RMV of Plaintiffs' property. "Real market value is the standard used throughout the ad valorem statutes, except for special assessments." Richardson v.Clackamas County Assessor, TC-MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) (citing Gangle v. Dept. ofRev., 13 OTR 343, 345 (1995)).
RMV is defined in ORS 308.205(1), as follows:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."
The assessment date for the 2009-10 tax year was January 1, 2009.[2] Plaintiffs purchased their condominium 10 months later, on November 1, 2009. This court has previously noted that the definition of RMV in ORS 308.205 provides for a "snapshot" of the property for purposes of determining RMV on a given date for purposes of assessment and taxation. See e.g.,Shatzer v. Dept. of Rev., 13 OTR 436, 441 (1996), Korean BethelPresbyterian Church v. Washington County Assessor, TC-MD 070015D, WL 80208 *4 (Jan 4, 2008). The assessment date is particularly important in this case because the parties agree there was a rapidly declining real estate market in 2009. *Page 5 
Turning to the issue of valuing property, there are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property even if one of the approaches is found to not be applicable. See ORS 308.205(2); OAR 150-308.205-(A)(2) (2007). Because the subject property is residential and not a rental, it generates no income. The income approach is therefore not applicable. Neither party considered the cost approach, for obvious reason. That leaves only the comparable sales approach.
In the case of a residential property, the comparable sales approach is typically the most relevant. "The court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property in order to reach a correct RMV. Richardson, WL 21263620 *3. The Appraisal Institute explains that the term "arm's-length" involves "[a] transaction between unrelated parties under no duress." Appraisal Institute,The Appraisal of Real Estate 305 (13th ed 2008). There appears to have been some duress in this case; duress in the form of economic hardship sufficient to force the owner to unload the property at a public auction.
The Department of Revenue (department) has promulgated an administrative rule that addresses the statutory requirement that market value be based on "arm's-length" transactions.
The rule provides in relevant part that:
 "[a]ll transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions. When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition."
OAR 150-308.205-(A)(2)(c). The court concludes that the nature of the auction in the present case constitutes a "nontypical market condition," and that the earlier transactions relied upon by Defendant more accurately reflect arm's-length market transactions indicative of value (RMV) as of January 1, 2009. *Page 6 
It is true that, in at least one case, the Oregon Supreme Court considered the purchase of a property by a taxpayer from the lending institution that acquired the property through foreclosure of its mortgage loan to be "a voluntary bona fide arm's-length transaction between a knowledgeable and willing buyer and a willing seller." Ward v. Dept. of Revenue,293 Or 506, 508, 650 P2d 923 (1982). In Ward, however, the lender that sold the property had obtained an independent appraisal that valued the property at the same amount for which it subsequently sold to the taxpayer, Ward.
Plaintiffs submitted 14 exhibits into evidence, including the financing appraisal. Plaintiffs argue that their purchase price, at public auction, "was a recent voluntary arm's-length sale between a knowledgeable and willing buyer and seller and thus should be very persuasive of real market value[,]" citingKem v. Dept. of Rev., 267 Or 111, 114, 514 P2d 1335 (1973). (Ptfs' Br at 1.) The Supreme Court in Kem ruled that a recent sale of the property in question, while not conclusive of value, is persuasive, provided it is arm's length, and the participants are knowledgeable and willing. Plaintiffs cite a number of other cases in support of their argument that sales occurring 10 or more months before or after the assessment date are reliable, persuasive evidence of the value of a property. The court has no problem with the findings in those cases, but notes that RMV is a question of fact to be decided on a case-by-case basis. The fact that Plaintiffs bought their property at a one-day public auction held at a hotel in Portland, an auction conducted by the California auctioneer, strongly suggests that Plaintiffs paid less than the actual market value of the property.
In a case very similar to the one at hand, this court rejected an auction sale as a valid indicator of value, stating in part:
 "An auction is defined as a `sale of property to the highest bidder.' (Webster's Third Int' l Dictionary 142 (unabridged ed 2002).) An auction eliminates the negotiation between the buyer and seller and requires buyers to negotiate with each other, generally leaving the seller out of the negotiation process." *Page 7 
Schnabel v. Clatsop County Assessor, TC-MD 100618D, WL 646678 *2 (Feb 22, 2011). Schnabel involved the sale of another fourth floor condominium in Canary Lofts, Phase II for $206,000 compared to an RMV on the assessment and tax rolls of $445,000. The Schnabels also purchased their condominium at the November 2009 auction, and that sale is one of the "comparables" on which Plaintiffs rely in support of their assertion that the purchase price of their unit is the best indication of market value. The court in Schnabel rejected the plaintiffs' request for a reduction in RMV to the $206,000 purchase price, concluding that the plaintiffs had failed to prove their case by a preponderance of the evidence.
As in Schnabel, the court here finds that Plaintiffs' November 2009 auction purchase was not an arm's-length transaction and not a valid indicator of the market value of the property on the January 1, 2009, assessment date.
Plaintiffs' own appraisal supports the court's finding. That appraiser estimated the market value of Plaintiffs' condominium at $225,000 as of December 2, 2009. (Ptfs' Ex 14-4.)
The appraiser notes the following:
 "Clearly the opinion of value is somewhat higher than the sales price. Buyers took advantage of the one day sale of these units and soaked up the extensive inventory that has been available. The subject units have been sold under market by a developer who clearly needed to resolve the excess inventory due to the lack of ongoing sales. The subject property was developed with an absorption rate in mind and this has not been supported by the market due to the current recession."
(Ptfs' Ex 14-4.) (Emphasis added.)
Defendant estimated the market value of Plaintiffs' property to be $445,000 as of January 1, 2009. Defendant relied on the sale of six units in the building where the subject is located (Building B). (Def Ex A at 6, 8.) The sales involved units on the second, third, and fourth floors. (Id. at 8.) The subject is on the fourth floor. All six sales occurred within one month of the January 1, 2009, assessment date. (Id.) The prices ranged from a low of $303,900 (sale #3) to a high of $460,067 (sale #6). The units on the second and third floors sold for prices *Page 8 
in the low $300,000 range while the two sales on the fourth floor sold for $429,900 (sale #5) and $460,067 (sale #6). (Id.) In arriving at her $445,000 market value estimate, McCleary analyzed "listing and sales information for the subject and other units in the Canary Loft Condominiums." (Def' Ex A at 10.) McCleary concluded that "the market was selling close to listed values in the first part of 2009. Sales 1 thru 6 show that the market was still strong and selling for close to the full listed price or above, which supports the RMV that was placed on these units." (Id.)
Plaintiffs are the party seeking affirmative relief and therefore bear the burden of proof, which in the Tax Court is a "preponderance of the evidence." ORS 305.427. This court has previously ruled that "preponderance" means "the more convincing or greater weight of evidence." Schaefer v. Dept. of Rev., TC No 4530 at 4, WL 914208 (July 12, 2001) (citing Feves v. Dept. of Rev.,4 OTR 302 (1971)).
Plaintiffs acknowledge, both in their written material submitted to the court and the testimony at trial, that there was a sharp decline in the market. Plaintiffs contend the decline began in the fall 2008 and continued through 2009. Defendant agrees that there was a decline in the market, but insists that the market was strong in 2008 and that the decline did not begin until 2009. In any event, the applicable assessment date is January 1, 2009, and Plaintiffs purchased their property some 10 months after the assessment date, in November 2009. The fact that the parties agree there was a sharp decline in the market during the 2009 calendar year, coupled with the fact that Plaintiffs purchased their property at a one-day public auction conducted at an airport hotel roughly 100 miles from the property, leads the court to conclude that Plaintiffs have failed to demonstrate an error in the record assessment by a preponderance of the evidence. *Page 9 
 III. CONCLUSION
The court concludes that Plaintiffs have failed to establish an error in the real market value of their property, described more particularly above, as of the January 1, 2009, assessment date. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied and that the real market value for the subject property, identified as assessor's Account 57637, was $445,000 as of January 1, 2009 (2009-10 tax year); and
IT IS FURTHER DECIDED that exception real market value, maximum assessed value, and assessed value for the 2009-10 tax year shall remain undisturbed.
Dated this ___ day of May 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Dan Robinsonon June 6, 2011. The Court filed and entered this documenton June 6, 2011.
[1] "Exception value" is a term used to identify property added to the assessment and tax rolls for the current tax year that results in an addition to both RMV and Maximum Assessed Value (MAV), and anexception to the typical constitutional and statutory cap of three percent on annual increases to MAV. ORS 308.146(1) (providing for annual three percent MAV increases); Or Const, ArtXI, § 11(1)(b) (generally capping annual MAV increases to three percent over the prior tax year); ORS 308.146(3) (providing for alternate method for determining MAV for new property that has come to be known as exception value); ORS 308.153(1) (providing for the method of calculating MAV for new property). All references to the Oregon Revised Statutes (ORS) are to 2007.
[2] The "assessment year" is a calendar year beginning on January 1. ORS 308.007(1)(b). January 1 is also the annual "assessment date." ORS 308.007(1)(a) (providing that the assessment date is "the day of the assessment year on which property is to be assessed under ORS 308.210") and ORS 308.210(1) (requiring the assessor to assess the value of all property on January 1). The "tax year" is a fiscal year that begins on July 1 and ends 12 months later on June 30. ORS 308.007(1)(c). Finally, "the assessment year beginning January 1 corresponds to the tax year beginning July 1 of the same calendar year." ORS 308.007(2). *Page 1