IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| BOARDMAN ACQUISITION LLC, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 130442C |
| | ) | |
| v. | ) | |
| | ) | |
| MORROW COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

The court entered its Decision in the above-entitled matter on November 25, 2013. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

This matter is before the court on cross-motions for summary judgment, Plaintiff having challenged the validity of Defendant's imposition of additional taxes as part of a May 29, 2013, farm use special assessment disqualification of 99.90 acres of land identified in the assessor's records for the 2013-14 tax year as Accounts 4N2606-103, 11386 and 4N2606-104, 11455.

The parties each filed a cross-motion for summary judgment and follow-up responses.[1] Briefing in the matter closed October 10, 2013. Plaintiff is represented by Dan Eller, Attorney at Law. Defendant represented himself in his capacity as Assessor, with the assistance of Mike Gorman, an appraiser in that office.[2]

/ / /

---

[1] Although the court refers to the parties' second round of briefing as "responses," only Plaintiff actually titled his document as such. Defendant used the term "reply" as opposed to "response." Plaintiff titled its document "Response To Defendant's Cross Motion For Summary Judgment;" Defendant titled its document "Reply On Cross Motion For Summary Judgment."

[2] Gorman identifies himself as an appraiser with Morrow County in an email to an employee with the Port of Morrow. (Stip Ex 3.)

## I.  STATEMENT OF FACTS

The facts set forth below are from the parties' stipulated facts and exhibits, as well as from uncontroverted factual statements in the pleadings.

A.  *Introduction*

The tax year at issue is 2013-14.  (Stip Facts at 1, ¶ 4.)  "The property that is the subject of this appeal is designated in the records of the Morrow County, Oregon, Assessor as Assessor's Account Nos. 4N2606-103, 11386 and 4N2606-104, 11455 (collectively, the 'Property')."  (Stip Facts at 1, ¶ 5.)  Each parcel of property is 49.95 acres, for a total of 99.90 acres.  (Stip Ex 5 at 1, 3, 4, 5.)

B.  *Relevant history prior to Plaintiff's ownership*

On August 6, 2012, the Port of Morrow (the Port) was the sole owner of the Property. (Stip Facts at 2, ¶ 9.)

Prior to August 6, 2012, the Port leased the Property to a taxable tenant (Prior Tenant), "Frederickson Farming, LLC, * * * Boardman, Oregon," that used the property for a farm-related use.  (Stip Facts at 1, ¶ 6; Stip Ex 1.)  Prior Tenant had qualified the property for nonexclusive use farm use zone special assessment under the provisions of ORS 308A.068 to ORS 308A.083.  (Stip Facts at 2, ¶ 7; Stip Ex 5 at 1, 4.)

On August 6, 2012, the Port terminated its lease with Prior Tenant.  (Stip Facts at 2, ¶ 8; Stip Ex 1.)  Under the terms of the Lease Termination Agreement between the Port and Prior Tenant, termination was "effective immediately."  (Stip Ex 1, ¶ 5.)

"In an email dated August 7, 2012, the Port transmitted the Lease Termination Agreement to Defendant."  (Stip Facts at 2, ¶ 10; Stip Ex 2.)  That email, written by a "Ben Foster, EIT, LSIT, Port of Morrow," states in relevant part:

"I have another special farm use disqualification. *The Port* of Morrow has *terminated 99.9 acres of farm lease* with Frederickson Farms (see attached termination). * * * This morning I would like to write up *a letter* to send to Morrow County to disqualify 99.90 acres from * * * special farm use. Please *let me know* if you see any complications with **this** [a letter], **or** if the county would require me to *mail hard copies* of any of these attachments *with the letter*."

(Stip Ex 2.) (Emphasis added.)

Mike Gorman, an appraiser with the county assessor's office, responded to Mr. Foster's email later that same day as follows:

"Hi Ben, sounds good. The DQ[3] will be processed for 1/1/13, it is too late to process a DQ for the current year. We are in the middle of a computer software change here and things are pretty hectic around here so I won't be processing this until later this fall but go ahead and send the official *request* letter, email is fine."

(Stip Facts at 2, ¶ 11; Stip Ex 3.) (Emphasis added.)

C.      *Plaintiff's acquisition, disqualification, and appeal*

On August 10, 2012, Plaintiff acquired the Property from the Port. (Stip Facts at 2, ¶ 12; Stip Ex 4.) That sale occurred four days after the Port's lease termination and three days after the Port notified the assessor of that termination and requested that the property be disqualified from "special farm use." (Stip Ex 2.)

Nearly 10 months after Plaintiff purchased the subject property from the Port, it received notices of disqualification from Defendant dated May 29, 2013. (Stip Facts at 2, ¶ 13; Stip Ex 5.)

Plaintiff was the sole owner of the Property from the date of purchase on August 10, 2012, through the date of Defendant's disqualification notices dated May 29, 2013. (Stip Facts at 2, ¶ 14.)

/ / /

---

[3] The court presumes that "DQ" is an acronym for disqualification.

## II. ANALYSIS

Oregon affords special assessment rules and benefits for qualifying farmland. *See generally* ORS 308A.050 to ORS 308A.110.[4] The statutes have slightly different rules for land in an exclusive farm use zone and land not within an exclusive farm use zone. *See* ORS 308A.062 and ORS 308A.068. Both statutes do have one thing in common: they require that the property be used exclusively for farming. (*Id.*) When such a qualifying use occurs and special assessment is approved, the property is assessed and taxed at a reduced rate.

The legislature has expressed its intent with regard to agricultural use of land in this state in ORS 308A.050, as follows:

> "The Legislative Assembly recognizes that *agriculture and related land uses contribute significantly to Oregon's character and economy*. The Legislative Assembly finds that *providing the means for agriculture to continue and prosper is in the interest of all citizens of this state*, who benefit directly or indirectly from agricultural production and stewardship of farmlands and ranchlands. Valuation of farm properties based upon market data from sales for investment or other purposes not connected with bona fide farm use encourages the conversion of agricultural land to other uses. * * * Therefore, *it is the declared intent of the Legislative Assembly that bona fide farm properties be assessed* for ad valorem property tax purposes *at a value that is exclusive of values attributable to urban influences or speculative purposes*."

(Emphasis added.)

The subject property is a land not within an exclusive farm use zone. ORS 308A.068 provides for special assessment of land not *zoned* exclusively for farm use (*i.e.*, not zoned for exclusive farm use, often referred to as non-EFU land) if it is employed in a qualifying farm use as defined in ORS 308A.056, meets applicable income requirements, etc.

The parties agree that the subject property qualified for special assessment under ORS 308A.068 because it was employed in a farm-related use by a tenant of the prior owner (the

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

Port), and that on August 6, 2012, the Port terminated its lease with the Prior Tenant. (Stip Facts at 2, ¶¶ 7, 8.) Termination of that lease ended the qualifying farm use and the property's continued entitlement to special assessment.[5] The parties further agree that the Port notified Defendant of the termination of its lease with the former tenant by email dated August 7, 2012. (Stip Facts at 2, ¶ 10.)

Although the subject property was owned by the Port, and, except for the lease to a nonexempt entity, would have been completely exempt from taxation under ORS 307.090, the lease between the Port and Prior Tenant subjected the property to assessment and taxation. However, because of the qualifying farm use, the Property benefited from the farm use special assessment provisions of the law.[6]

Under ORS 307.110(1) the property was "subject to assessment and taxation for the * * * *specially assessed value* thereof uniformly with real property of nonexempt ownerships." (Emphasis added.) Consistent with the intent of the legislature, the specially assessed value was a reduced amount determined in accordance with the provisions of ORS 308A.092 and ORS 308A.107, using the statutorily mandated income approach set out in subsection (2) of ORS 308A.092 that uses a reduced capitalization rate.[7]

---

[5] As is stated elsewhere in this Decision, the special assessment continues when disqualification occurs after July 1, which is the start of the tax year. *See generally* ORS 308.210, ORS 308.007, and ORS 308A.068(3). Plaintiff does not argue that point (that special assessment continued through the balance of the tax year). (Ptf's Resp at 3.)

[6] The court could find no indication in the stipulated facts or exhibits, etc., that are properly part of the "record" for a ruling on the parties' cross-motions as to whether the terms of the lease included payment of the taxes by the prior farmer tenant leasing from the Port. However, that is not a fact material to the court's ruling in the matter.

[7] ORS 308A.092 provides in relevant part:

"(2) The values for farm use of farmland shall be determined utilizing an income approach. In utilizing the income approach, the capitalization rate shall be the effective rate of interest charged in Oregon by the Federal Farm Credit Bank system at the time of closing on loans for farm properties estimated as an average over the past five reported calendar years, plus a component for the local tax rate.

Four days after the prior owner – the Port – terminated the lease with the former tenant farmer, and three days after the Port notified the assessor of the lease termination, it sold the property to Plaintiff, a taxable entity, on August 10, 2012. (Stip Facts at 2, ¶ 12.) The Port's notification to the assessor was consistent with ORS 308A.116(3), which requires property owners to notify the assessor of any change in use of the property that causes it to cease to be used solely for farm use "prior to the next January 1 assessment date." In addition, the notification complied with the requirements of subsection (1), paragraph (a) of that statute, which provides in relevant part: "[n]on-exclusive farm use zone farmland qualified for special assessment under ORS 308A.068 shall be disqualified from such special assessment upon * * * [n]*otification by the taxpayer* *to the assessor to remove the special assessment*." (Emphasis added.)

ORS 308A.703 provides generally for the imposition of additional taxes upon disqualification from special assessment. The statute provides in relevant part:

> "(1) This section applies to land upon the land's disqualification from special assessment under any of the following sections:
>
> "* * * * *
>
> "(b) Nonexclusive farm use zone farmland under ORS 308A.116[.]
>
> "* * * * *
>
> "(2) Following a disqualification listed in subsection (1) of this section, *an additional tax* shall be added to the tax extended against the land *on the next assessment and tax roll*, to be collected and distributed in the same manner as other ad valorem property tax moneys."

---

"(3) The county assessors shall develop tables for each assessment year that reflect, for each class and area, the values determined under this section and that express the values as values per acre."

ORS 308A.107(1) sets forth the method for determining "[t]he value for farm use, maximum assessed value [for qualifying farmland property subject to special assessment,] and assessed value."

(Emphasis added.)

Plaintiff argues that the Property became disqualified either on August 6, 2012, when the Port terminated its lease with the then-qualifying Prior Tenant, or August 7, 2012, the date the Port notified Defendant of the lease termination. (Ptf's Cross Mot for Summ J at 3-5; Ptf's Resp to Def's Cross Mot for Summ J at 3.) Defendant disagrees, arguing that, under ORS 308A.068(3), the property continued to qualify for special assessment and because "[t]he land was properly qualified for special assessment as of the July 1, 2012 date [set forth in subsection (3) of ORS 308A.068], * * *" it could not be disqualified on the date of notification by the Port because "[t]here is no provision in the law to allow the defendant to disqualify land from special assessment that is properly qualify [sic] as of July 1, 2012 and is being used as farmland on that date." (Def's Cross Mot for Summ J at 2-3.)

Looking more closely at Plaintiff's position, Plaintiff reasons as follows. ORS 308A.709(5) precludes the assessor from imposing additional taxes under ORS 308A.703 on land disqualified from special assessment when, as in this case, the property at issue is "[p]ublic property that was leased or rented to a taxable owner [* * *] at the time of disqualification, and the reason for the disqualification was the termination of the lease under which the land was assessed."[8] (Ptf's Cross Mot for Summ J at 3.) Plaintiff insists that that statutory provision is "dispositive." (Ptf's Cross Mot for Summ J at 3.)

---

[8] "Notwithstanding that land may have been disqualified from special assessment, no additional taxes may be imposed under ORS 308A.703 if, as of the date the disqualification is taken into account on the assessment and tax roll, the land is any of the following:

"* * * * *

"(5) Public property that was leased or rented to a taxable owner as described in ORS 307.110 at the time of disqualification, and the reason for the disqualification was the termination of the lease under which the land was assessed."

ORS 308A.709.

Plaintiff next argues that the determination of *when* disqualification occurs is governed by ORS 308A.116(1)(a), which provides in relevant part that "[n]on-EFU farmland [qualified for special assessment under ORS 308A.068] 'shall be disqualified from special assessment upon [* * *] [n]otification by the taxpayer to the assessor to remove the special assessment." (Ptf's Cross Mot for Summ J at 3.) Plaintiff insists that the combination of those statutes prohibited the assessor from assessing any additional taxes against Plaintiff because the date of disqualification was August 7, 2012, when the Port notified the assessor of the termination of the lease with the former tenant that was farming the property. (*Id*. at 3-4.)

In its cross-motion, Plaintiff expresses its understanding that Defendant believed it "was permitted for some * * * reason to ignore the statutory steps to exemption from recapture" (meaning imposition of the additional taxes under ORS 308A.703) set forth in the court's Decision above and in Plaintiff's cross-motion for summary judgment. (*Id*. at 4.) Plaintiff goes on to state that "Defendant apparently believes that it was required to wait until January 1, 2013 to determine whether a disqualification had occurred; and, if so [to] determine whether additional taxes might be imposed based on the facts known to Defendant on January 1, 2013." (*Id*.)

Citing *Port of Morrow v. Morrow County Assessor*, TC-MD 091456D (Feb 28, 2011), Plaintiff next states that "the Port's notice of disqualification is the act of disqualification that sets into motion the application of ORS 308A.116, ORS 308A.703, and ORS 308A.709(5)." (Ptf's Cross Mot for Summ J at 5.) That latter assertion is the heart of Plaintiff's case. Plaintiff, insisting that that is the correct reading of the relevant disqualification provisions, argues that "Defendant is not permitted to wait until later to process and/or accept a notice of disqualification." (*Id*.) In so arguing, Plaintiff dismisses OAR 150-308A.116(2), which, as Plaintiff observes in its cross-motion, provides that where "disqualification is effective after

June 30, [n]on-EFU property will remain valued as such until the following July 1." (*Id*.) Under the facts of this case, as viewed by Plaintiff, the court's August 7, 2012, notification to the assessor acted as the date the Property became disqualified, notwithstanding the fact that it continued to be specially assessed as farmland, in accordance with ORS 308A.068 (3) until the end of the 2012-13 tax year, which was June 30, 2013.

Plaintiff argues that the " 'notion' [that the assessor can wait to process or accept a property owner's notification to the assessor to have the property removed from special assessment] is not relevant to this matter because that goes to assessment methodology, not disqualification." (*Id*.) Plaintiff misunderstands the roles of the respective players in this case. The court believes that Plaintiff's misunderstanding may, in part, stem from an incorrect interpretation of the emails exchanged by the Port's employee Ben Foster and the assessor's appraiser Mike Gorman. The Port notified the assessor by email that it had terminated its farm lease with its Prior Tenant and went on to state that it "would like to write up a letter to send to Morrow County to disqualify 99.90 acres from * * * special farm use." (Stip Ex 2.) That email continues with the following sentence: "[p]lease let me know if you see any complications with this, or if the county would require [the Port] to mail hardcopies of any of these attachments with *the* letter." (*Id*.) The court believes Plaintiff misconstrued that email as an indication by the Port that the Port desired or intended to disqualify the property when, in fact, in the court's view, a proper reading of that email suggests that the Port was merely trying to determine the appropriate method for officially notifying the assessor that it had terminated the lease with the Prior Tenant and wanted to send a letter to the county officially apprising them of that fact so that the *assessor* could disqualify the property from special assessment. It is, after all, the responsibility of the assessor, not the Port, to disqualify property from special assessment upon notification by the

property owner. That interpretation is borne out by the fact that the response by the county appraiser Mike Gorman advises the Port employee to send the "request" letter and that transmittal by email is "fine." (Stip Ex 3.)

Plaintiff expands upon its argument in its response brief, distinguishing between the "concept" of valuation and assessment, on the one hand, and disqualification on the other, asserting that they are "merely timing issues." (Ptf's Resp at 3.) "[C]oncepts of the type set forth in ORS 308A.068(3) are merely timing issues that go to valuation and the assessment of tax, and they do not go to disqualification, which is governed by different statutes." (*Id.*)

Plaintiff minimizes the significance of timing in Oregon's scheme of property assessment and taxation in general, and in matters such as special assessment in particular.

It is Plaintiff's expressed view that "ORS 308A.068(3) is similar to OAR 150-308A.116(2) in that each instructs local assessors as to when they should be determining whether or not a property is exempt: January 1 of the assessment year, unless the property becomes disqualified before July 1 of the assessment year." (*Id.*) Plaintiff acknowledges in its Response that under ORS 308A.068(3) "that if property becomes disqualified after July 1, that property will continue to be valued and assessed per the terms of whatever special assessment program is applicable until the following tax year." (*Id.*) That is where the court finds Plaintiff misapprehends the statutory scheme for disqualification of nonexclusive farm use zone farmland upon notification by the taxpayer to the assessor requesting removal of the property from special assessment. Plaintiff incorrectly asserts in its Response that "the disqualification of the [subject] Property [occurred] *on August 6, 2012*." (*Id.*)

Oregon's January 1 date can be seen, among other places, in ORS 308A.068(3), which provides that if the property is disqualified after July 1, the disqualification does not take effect

until the following January 1. It can also be found in OAR 150-308A.116(2), which provides in relevant part that "[d]isqualification fort non-farm use occurs as of the January 1 assessment date and is effective as of June 30." It is also seen generally throughout the Oregon statutes governing the state's system of property tax valuation and assessment, which applies not only to routine annual determinations of real market value, but also in the statutes governing use special assessment, which set forth the time frame in which a taxpayer applies for special assessment and when special assessment begins.

Plaintiff's attempt to distinguish between disqualification on the one hand, and assessment and taxation on the other hand, finds no support in the law. Such a construction is akin to distinguishing between the time during the assessment year when a taxpayer adds onto their home (which is a 12-month calendar year ORS 308.007), and when the increase in value stemming from the addition of the new property is taken into account by the assessor. The two are inextricably tied to one another. The assessor in the home remodel example looks each assessment year at all the work that was done during the prior assessment year, as of January 1 of the current assessment year, and places a value on the work done as of January 1 of the current assessment year, which then carries over to the following July 1, the first day of the fiscal tax year corresponding to the January 1 assessment date six months prior to that July 1 date. In the case of a disqualification of property from farm use special assessment, the date a taxpayer notifies the assessor that farming has ceased or the assessor otherwise discovers the property is no longer being farmed, begins the *process* of the disqualification. The legislature set forth a specific set of rules that determine when the act triggering the disqualification impacts the special assessment of the property, removing that beneficial assessment. The act of cessation of farming (either by lease termination or otherwise) and the consequential effect that act has on the

valuation of the property are simply a series of events in a single process or outcome. There is no special, independent significance to the notification by a taxpayer to the assessor requesting that a property be removed from special assessment, as occurred in this case.

A request by a taxpayer for disqualification of special assessment is in many ways no different than a taxpayer's application for special assessment. Each triggers a process for the determination of whether or not a property qualifies for special assessment. The ultimate statutory objective of that process is the determination of the value of the property for purposes of the assessment and taxation of a given property. It must be remembered that special assessment is not a determination of no value, but valuation at a reduced rate, which, in turn, reduces the taxes on the property. They are events on a continuum tied to certain specific dates set forth in the statutes.

Another analogy might prove helpful to analyzing Plaintiff's position. Plaintiff argues that the date a taxpayer notifies the assessor to remove the property from special assessment is the date the property becomes qualified. A taxpayer owning land not zoned for farm use special assessment files an application with the assessor between the January 1 assessment date and April 1. ORS 308A .077. If a taxpayer happens to file such application on, say, January 3, the property does not become entitled to special assessment on that date, regardless of when the assessor reviews and approves the application. In other words, the transmittal of the application does not secure or establish the date upon which special assessment of the property begins. Rather, the assessor's determination that property qualifies for special assessment (after reviewing the application and the applicable statutory requirements for special assessment), assuming the application is filed by the April 1 deadline, triggers the reduced valuation of the property (*i.e.* the special assessment), an event that takes effect at the beginning of the following

tax year, which begins on July 1 of that calendar year. That fact is consistent with the whole process of Oregon's property valuation system. That determination, in turn, is tied to the January 1 assessment date which, as the court has previously stated, is the "snapshot" for the determination of a property's value. *Shatzer v. Dept. of Rev.*, 13 OTR 436, 440, 441 (1996) (concluding that "[t]he element of time is fundamental to the concept of real market value," and that ORS 308.205 "does provide for a 'snapshot' of the property for assessment," although the law then in effect defined real market value as "the minimum amount in cash which could reasonably be expected by an informed seller acting without compulsion from an informed buyer," a definition subsequently changed by the legislature as "the amount in cash that could reasonably be expected.")

If a taxpayer notifies the assessor of the cessation of farming and requests removal of special assessment after July 1, the property remains specially assessed for the balance of that tax year. Where, as in this case, a property owner notifies the assessor after July 1, but prior to December 31, and then subsequently sells the property to the taxable owner, the new owner continues to enjoy the benefits of special assessment for the 12-month tax year ending the following June 30. However, the disqualification then takes effect for that following tax year and, pursuant to statute, an additional recapture or rollback tax is added to the rolls and that new taxable owner becomes responsible for payment of that additional tax. That is consistent with the express legislative intent of encouraging agricultural use of land in Oregon. As long as the property is being farmed either by the owner or a tenant, the property is valued, assessed and taxed at a reduced (specially assessed) rate. The statutory requirement for imposition of additional taxes is intended to act as a deterrent from terminating agricultural and farming operations on a given property.

ORS 308A.068(3) provides that the determination of whether farm land qualifies for special assessment is made as of January 1 of the assessment year. That statutory provision goes on to describe the consequences of the disqualification of a property in terms of when disqualification takes effect based on whether notification or discovery of no farming occurs before or after July 1.

ORS 308A.068(3) is separate from the application process set out in ORS 308A.077. Qualification for special assessment and disqualification from special assessment are two sides of the same coin. Both relate to the valuation of the property, which in this case means a determination of whether the property will be valued at a reduced (specially assessed) rate or not. The property's entitlement to special assessment is tied to the January 1 assessment date and the activity occurring on that date.[9] If farming commences within the time frame set forth in the statute, the property enjoys the benefits of special assessment for the upcoming tax year that begins on July 1. Therein lies the relevance of the two key dates for property assessment and taxation: January 1 is the assessment date and the following July 1 is the beginning of the tax year. The legislature has made that system workable by establishing specific dates for when determinations of special assessment are made, when applications, if required, must be filed, and when the beneficial effect of special assessment takes place. If the property qualifies for special assessment on July 1, it does not matter that the taxpayer comes along a month and a half later and notifies the assessor that the property should be removed from special assessment. The property continues to be specially assessed for the balance of that 12-month tax year. As

---

[9] The statutes do recognize that inclement weather during the winter months may as a practical matter prevent a farmer from actually engaging in visible or actual farming activity on the January 1 assessment date and provides for a limited look back period which requires that farming occur as of a particular time in the year prior to the commencement of the tax year. OAR 150-308A.068(2)(a) (providing that "[m]ost land is not farmed during the winter months including January 1. If the land is not employed in farm use on January 1, *the assessor may look at the prior year's usage* of the land to determine qualification for January 1"). (Emphasis added.)

applicable to this case, a property owner's notification to the assessor requesting removal of special assessment on August 7, does not establish the date of the property's disqualification. Rather, notification by the property owner is simply a mechanism to inform the assessor that the property is no longer being farmed and needs to be removed from special assessment. The statute provides that the property in that situation remains specially assessed through the following June 30, which is the end of the tax year in which the property owner notified the assessor the farming had ceased.

Oregon uses those two dates - January 1 and July 1 - to govern its entire system of property assessment and taxation, including matters such as exemption in special assessment. Although there are exculpatory clauses or safe havens carved out for certain specific and narrowly defined instances, the two important dates that anchor all of the state's determinations for valuation, assessment, special assessment, taxation, exemption, etc., are January 1 and July 1. The former is the date of assessment. ORS 308.210(1) and ORS 308.007(1)(b), and the latter the first day of the "tax year," which is a fiscal year of 12 months beginning on July 1 and corresponding to the assessment date six months earlier on January 1. (*see generally* ORS 308.007.) For example, the assessment date of January 1, 2012, corresponds to the tax year that begins six months later on July 1, 2012. The disqualification in this case did not occur on August 6, 2012, when the Port terminated its lease with its tenant farmer, but, rather, on January 1, 2013, as provided in OAR 150-308A.116(2)(a). That determination is made as of January 1, 2013.

### III.  CONCLUSION

After careful and deliberative evaluation of the parties' cross-motions for summary judgment, the court concludes that Plaintiff's motion should be denied and Defendant's motion

granted insofar as the effect of disqualification in imposition of the additional taxes on Plaintiff.

Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's motion is denied and

Defendant's motion is granted; Plaintiff's appeal is denied.

Dated this ___ day of December 2013.


_____
DAN ROBINSON
MAGISTRATE


*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within __60__ days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Dan Robinson on December 13, 2013. The court filed and entered this document on December 13, 2013.*